THOMAS B. GOODWILLIE ET AL. v. THE CITY OF DETROIT.

*Municipal corporations—Public improvements—Assessments—Preliminary estimate—Paving—Power of council—Estoppel.*

1. The charter of the city of Detroit requires the common council, before proceeding with any public improvement, except the opening of public streets, to secure from the board of public works a detailed estimate of the cost of the proposed improvement. Under the charter, plans and specifications for the various kinds of pavement are prepared in advance by the board of public works, and approved by the council. The paving of a certain street being under consideration, its estimated cost in gross was reported by the board of public works to the council, and, without any more particular estimate, its paving was ordered. And, in a suit to enjoin the collection of the paving assessment, it is held that the question of the cost of the proposed pavement would naturally be considered in detail upon the preparation by the board of public works, and approval by the council, of the plans and specifications therefor; that the duty of furnishing the estimate of cost is imposed upon the board of public works; that the council called upon the board for such estimate; that, an estimate having been furnished, and no further particulars having been called for, it must be assumed that the information received was sufficiently specific to enable the council to act intelligently.

2. The charter provides that the board of public works shall establish a system of sewers for the entire city, and cause to be designated the streets through which the same are to be

constructed; that no street shall be paved until the sewer to be constructed through it shall be completed so far as the pavement is to extend: "*Provided*, that all sewers, water-pipes, gas pipes, and all connections be made and completed at least one year before such paving is ordered to be done." As respects water and gas pipes and connections, neither the board of public works nor the council has authority to lay either. The water board has exclusive management and control of laying water pipes and connections, and the same are laid in its discretion, and gas is supplied by private corporations owning and managing the entire plant. The water board is empowered to lay pipes in the streets, and the consent of neither the council nor the board of public works is required, nor is there any provision in the charter enabling the council or the board of public works to direct or compel the laying of water pipes by the water board. And it is held that the proviso, so far as it relates to water and gas pipes and their connections, is inconsistent with the proper exercise of the general powers respecting street improvements conferred upon the common council, and void.

3. Section 188 of the charter (compilation of 1893) provides that "the proceeds of each special assessment levied for the grading or paving of any street or alley shall become part of the street-paving fund, and be credited therein to the account of the specific improvement for which the assessment was made: *Provided*, that the common council shall not, in any one year, enter into contracts for the grading and paving of streets, alleys, and public places, the cost of which will exceed in the aggregate $200,000, except upon the petition of the holders of the larger portion of the real estate directly abutting upon the portions of the street or alley proposed to be improved." And it is held that said section relates to such paving as might be done upon the petition of abutting owners; that the charter contains no provision for repaving upon petition of abutting owners or others; that, in view of the language used, and of the limitations contained in other sections upon the power of the council to raise money by general taxation for other paving, the limitation in section 188 must be held to be for the benefit of persons liable to special assessment, and to refer to contracts for paving, the cost of which is to be made by such special assessment.

4. In a suit to restrain the collection of a paving assessment, it appeared that a portion, at least, of the complainants, before the letting of the paving contract, filed with the common council a remonstrance against the paving of the street, placing their objection solely upon the ground of the "depression in

business," and asking that the paving be deferred until the next season; and that all of the objections made in the bill were available when the remonstrance was filed. And it is held that the relief asked for ought to be denied upon the ground that said complainants, notwithstanding their knowledge of the fact that the council was proceeding in the matter, stood by until the pavement was completed, the bonds probably issued, and then joined in a bill to set aside the assessment; citing *Byram v. City of Detroit*, 50 Mich. 56; *Lundbom v. City of Manistee*, 93 Id. 170.

Appeal from Wayne. (Donovan, J.) Argued October 23, 1894. Decided December 22, 1894.

Bill to enjoin the collection of a paving assessment. Defendant appeals. Decree reversed, and bill dismissed. The facts are stated in the opinion.

*Brooke & Spalding*, for complainants.

*John J. Speed*, for defendant.

McGRATH, C. J. The bill in this case is filed to enjoin the collection of a paving assessment. The case was heard on bill and answer. It is alleged that the proceedings are invalid—

"1. Because the board of public works never furnished the common council with the detailed estimate of cost of pavement required by the charter.

" 2. Because the laying of water and gas pipes in the portion of the street paved was not completed a full year before the pavement was ordered, as the charter requires, but, on the contrary, the city laid the water main in the street immediately before the laying of the pavement.

" 3. Because, by entering into this paving contract, the council exceeded the charter limitation upon the aggregate cost of paving contracts entered into in one year without the petition of the owners of abutting property."

Compiler's section 320 of the charter of the city provides that, when any public improvement is proposed, the common council, before proceeding with the same, shall refer

the matter to the board of public works, which shall forth-
with examine it, and report thereon to the council, giving
detailed estimates of the costs of the improvement, and
making such recommendation as it may deem expedient.
An estimate of the cost in gross was reported to the com-
mon council. The bill does not allege that a detailed esti-
mate was not actually made by the board. It does, how-
ever, allege that no other estimate was reported to the
council. In this respect only does the present case differ
from the case of *Cuming v. City of Grand Rapids*, 46
Mich. 157, 158. The charter of Grand Rapids provided
that, when the council should decide that any public work
was a necessary improvement, the board of public works
should determine as to the particular kind and quantity
of materials to be used therefor, and estimate the probable
cost and expense of such work, and of the material to be
used, in detail, and cause to be prepared, so far as neces-
sary, plans and specifications for such work, and report
its estimate to the common council. Mr. Justice COOLEY,
speaking for the Court in that case, says:

" The board of public works must undoubtedly make a
detailed estimate, but there is much reason for contending
that if only the sum total is reported to the council, and
that body sees fit to act upon it, the objection cannot be
taken afterwards. The estimate is for the information of
the council, to enable that body to determine how much
money shall be raised; and if they have the sum total,
and act upon it without calling for further particulars, it
may well be urged that the question is precluded."

Under the charter provision in that case, plans and
specifications were prepared by the board of public works
for each particular street, as its improvement was con-
templated, while, under defendant's charter, plans and
specifications for the various kinds of pavement are pre-
pared in advance by the board of public works, and
approved by the common council. The question of the

cost would naturally be considered in detail upon the preparation and approval of such plans and specifications. The duty of furnishing the estimate is imposed upon the board of public works; the council called upon the board for such estimate; and an estimate having been furnished, and no further particulars having been called for, it must be assumed that the information was sufficiently specific to enable the council to act intelligently. In *Butler v. City of Detroit*, 43 Mich. 552, the board of public works made no report as to the expediency of the proposed improvement, nor did they report any estimate of the cost. In *Mills v. City of Detroit*, 95 Mich. 422, the board reported no estimate whatever as to the cost.[1]

As to the second objection, complainants rely upon section 314, which is as follows:

"They shall establish a system of sewers for the entire city, and cause to be designated on said plats the streets through which the same are to be constructed; and no street shall be paved until the sewer to be constructed through the same shall be completed so far as the pavement is to extend: *Provided*, that all sewers, water-pipes, gas pipes, and all connections be made and completed at least one year before such paving is ordered to be done."

The section is section 6 of chapter 15, relating to the board of public works. Respecting water and gas pipes and connections, neither the board of public works nor the council has the authority to lay either. The water board has exclusive management and control of laying water pipes and connections, and the same are laid in its discretion, and gas is supplied by private corporations owning and managing the entire plant. The water board is empowered to lay pipes in the streets, and the consent of neither the council nor the board of public works is re-

---

[1] These cases, together with *Erie v. Brady*, 150 Penn. St. 462, were cited by complainants' counsel in support of their contention.

quired, nor is there any provision enabling the council or board of public works to direct or compel the laying of water pipes by the water board. Water connections are usually made at the expense of the consumer, and under the rule laid down in *Jones v. Water Commissioners,* 34 Mich. 273, the expense of these connections cannot be made a charge upon the abutting property in advance of their use. However, these connections are made under rules formulated by the water commissioners. The answer avers that the laying of the water pipes in the street in question was begun after the confirmation of the contract for paving, and was done by the board of water commissioners, without any actual notice to or knowledge of defendant or the board of public works. When the contract was let, there was no charter obstacle to the improvement. It certainly was not the intention that subsequent action by the water board would prevent the improvement, involve the city in litigation with respect to its contract, or, invalidate the assessment. The section referred to prohibits pavement until the sewers contemplated by the plan adopted shall have been completed, and then specifies that they shall be completed at least one year before pavement, but it does not prohibit paving until the water-pipes are laid. This section, so far as it relates to sewers, is consistent with the proper exercise by the common council of its powers. So far, however, as it relates to water or gas pipes or connections, the council has no authority over the subjects, except, in the case of gas pipes, to refuse permission for laying the same. The necessity for a pavement may not depend upon the presence of consumers of water. Large belts of unimproved and unoccupied property often divide thickly-settled districts, which are supplied with water; and for convenience, and police and fire protection, it frequently becomes necessary to pave streets leading from one of these districts to the other in advance

of any demand for water or gas in the unsettled territory. In view of these conditions, the power is given to the common council to order the improvement of streets in the absence of any petition therefor. Again, there is no rule governing the number of water or gas connections which may be needed upon a given frontage. That matter depends upon the number of habitations, rather than the number of lots. Action by the common council, in response to the demands of the public, cannot be made dependent upon the discretionary action of the water board, which is prompted by other exigencies, nor can the action of the council be made to hinge upon individual demands for water connections. The proviso, so far as it relates to water and gas pipes and their connections, must be held to be inconsistent with the proper exercise of the general powers respecting street improvements conferred upon the common council.

In support of the third objection, complainants rely upon section 188 of the charter, which is section 6 of chapter 11, relating to taxation and finance. That section provides that—

"'The proceeds of each special assessment levied for the grading or paving of any street or alley shall become part of the street-paving fund, and be credited therein to the account of the specific improvement for which the assessment was made: *Provided,* that the common council shall not, in any one year, enter into contracts for the grading and paving of streets, alleys, and public places, the cost of which will exceed in the aggregate $200,000, except upon the petition of the holders of the larger portion of the real estate directly abutting upon the portions of the street or alley proposed to be improved."

Section 121 of the charter confers upon the council power to pave, repair, and otherwise improve streets, and to provide for paying the cost thereof by assessment upon abutting property: "Provided, that the costs and expenses

of all repaving and repairing of streets　*　*　*　shall be paid out of the repairing fund, created and raised for such purpose." Section 217 provides that the cost of paving within the lines of the intersection of cross streets, and also the cost of the cross-walks, shall be paid out of the general road fund, and the cost of all repaving out of the re-paving fund. Section 224 provides for the issue of bonds for the cost of original paving, as estimated and assessed, which are made payable out of the street-paving fund. Section 1 of chapter 11, above referred to (compiler's section 183), divides the revenues and moneys of the corporation into different funds. Subdivision 7 provides for a general road fund, to defray the expenses of repairing paved streets and alleys, and of grading, paving, and improving the highways, streets, and alleys of said city in front of or adjacent to the property of the corporation, and to defray the expenses of constructing and repairing cross-walks in the several wards of the city. Section 2 of the same chapter (compiler's section 184) empowers the council to levy, assess, and collect taxes, *not exceeding 1 per cent.*, in order to defray the expenses for which the general fund, contingent fund, fire commission fund, poor fund, *general road fund,* and recorder's court fund are created. The charter contains no provision for the creation of any other fund out of which the cost of repaving or intersections may be paid.　There is no such fund as a repaving fund, except as section 121 makes the general road fund such fund.　There is no provision for raising money for the street-paving fund, except by assessment.

It will be observed that section 184 limits the amount which may be raised by taxation for the payment of the cost of repaving and intersections. Section 188 relates to the proceeds of special assessments levied for paving, and to paving the cost of which is payable from the street-

paving fund. It relates to such paving as might be done upon the petition of abutting owners. The charter contains no provision for repaving upon petition of abutting owners or others. Clearly, in view of this language, and of the limitation contained in the other sections upon the power of the council to raise money by general taxation for other paving, the limitation in this section is for the benefit of persons liable to special assessment, and refers to contracts for paving, the cost of which is to be made by such special assessment. The history of this section, and of the legislation on the subject of paving, is referred to, but from an examination thereof it will appear that originally the entire cost of paving and repaving was paid by the abutting owner. By subsequent legislation the cost of intersections, cross-walks, and repavement has been made payable from another fund, and from the proceeds of the general tax levy. The office of the limitation, as it originally appeared, was to protect abutting owners liable to assessment. The contention of the complainants is that the language shall be extended to embrace paving the cost of which is paid for by general taxation, and out of other funds, the amount of which is limited by the provisions relating to such funds. The fact that the limit was increased from $50,000 in 1857 to $200,000 in 1889, in a city, the area as well as the population of which had in the meantime vastly increased, does not necessarily tend to support the contention.

There is further ground, however, upon which the relief prayed for should be denied, at least as to those of the complainants who, before the letting of the contract for paving, filed with the common council a remonstrance against the paving of the street. The parties remonstrating placed their objection solely upon the ground of "the depression in business," and asked that the paving be deferred until the next season. All the objections now made

were available at the time.   Notwithstanding their knowl-
edge of the fact that the council was proceeding in the
matter, they stand by until the pavement is completed, the
bonds probably issued, and then join in a bill to set aside
the assessment.    *Byram v. City of Detroit*, 50 Mich. 56;
*Lundbom v. City of Manistee*, 93 Id. 170.

The decree of the court below is reversed, and the bill
dismissed, with costs to defendant.

The other Justices concurred.