### NOWLEN *v.* CITY OF BENTON HARBOR.

1. MUNICIPAL CORPORATIONS—PAVING ASSESSMENTS—ESTOPPEL.
    The owner of property abutting upon a street is estopped from denying liability for a portion of the expense of paving the street, where he knew the improvements were being made, and offered no objection to them.

2. SAME—ASSESSMENT DISTRICTS—CORNER LOTS.
    It is competent for a city of the fourth class to assess a corner lot as an entire parcel in two special assessment districts for

paving each street, provided it does not impose a greater bur-
den than the statute permits.

3. SAME—CONSTRUCTION OF STATUTE—PRECEDING TAX ROLL.
   1 Comp. Laws, § 3196, providing that no special assessment
   shall exceed 25 per cent. of the value of the land "as valued
   and assessed for State and county taxation in the last preced-
   ing tax roll," refers to the last roll upon which State and
   county taxes have been spread, and not the roll of the cur-
   rent year, which has been approved by the board of review.

4. SAME—LIMITATIONS.
   Under 1 Comp. Laws, §§ 3196, 3295, an assessment may be
   made upon a parcel of land for 25 per cent. of its valuation
   for each improvement, but must not exceed 5 per cent. per an-
   num of its valuation for all assessments.

5. SAME—EXCESSIVE ASSESSMENTS—EQUITY.
   Complainant, in 1900, was the owner of one corner lot and two
   inside lots, assessed as one parcel for $2,500. He sold one of
   the inside lots for $1,800. In 1901 the council assessed the
   two remaining lots for a special paving tax on the basis of a
   valuation of $3,000, at which they were assessed in the gen-
   eral assessment roll for 1901. Complainant admitted they
   were worth $3,000. *Held*, that, as complainant came into
   equity, he must do equity, and the valuation of $3,000 was
   not excessive.

Appeal from Berrien; Coolidge, J.   Submitted June 24,
1903.   (Docket No. 84.)   Decided September 15, 1903.

Bill by Albert R. Nowlen against the city of Benton
Harbor and Adolphus S. Miles, city treasurer, to restrain
the collection of a paving tax. From a decree for complain-
ant, defendant city appeals.   Modified.

The city of Benton Harbor took steps to pave portions
of two streets, Wall and Main, which intersected each
other at nearly right angles. The complainant owned
three lots,—No. 3, fronting only on East Main street;
Nos. 1 and 2, fronting on East Main and Wall streets,—
and in the year 1900 they were assessed together as one
parcel at $2,500. Subsequently, and before proceedings
to pave were taken, lot 3 was sold for $1,800. Separate

resolutions were passed by the council on different days, and steps were taken to levy assessments for this work, and separate assessment districts were created by the council for the purpose of levying the cost of the respective improvements. Lots 1 and 2 were included as one parcel in each district, and the work proceeded to completion with the knowledge of complainant. For the purpose, special rolls were made, these lots being listed at $3,000, which amount was their assessed value according to a general assessment roll made in the spring of 1901. These special rolls were confirmed in September, 1901, which was before the State, county, and school taxes were spread for that year. The total amount levied against complainant for these improvements was $1,037, which was collectible in five annual payments. The rolls went into the hands of the treasurer for collection in December, 1901. Complainant filed the bill in February, 1902, praying an injunction against the city and its treasurer to prevent the collection of the tax, and to set aside such assessment and all proceedings of the council pertaining to said pavement. On the hearing the prayer was amended to include general relief.

It is observable from the foregoing statement that the proceedings imposed a tax for the two pavements of more than 25 per cent. of the value of the premises, and the amount payable each year exceeded 5 per cent. of the valuation actually made. A number of questions were raised at the hearing:

(1) To the proceedings generally, by reason of various alleged irregularities.

(2) To the including of the premises in two assessment districts.

(3) That the valuation was irregular and excessive, and that it should have followed the tax roll for 1900.

(4) That the levy was excessive, because only 25 per cent. of the value could be lawfully levied at one time, and only 5 per cent. in one year.

The circuit court held the tax excessive, and decreed the special assessment void as to complainant, but without

prejudice to a reassessment of the property as provided by law. Neither party was allowed costs, except that the treasurer was given costs against the complainant upon the ground that he was an unnecessary and improper party to the suit. The defendant city has appealed.

*A. Plummer* and *George W. Bridgman*, for complainant.

*Humphrey S. Gray* (*G. M. Valentine*, of counsel), for defendant city.

HOOKER, C. J. (*after stating the facts*). The testimony shows that the three lots had a frontage of 150 feet on East Main street and of 165 feet on Wall street. During the time when these improvements were being made, the paving of Wall street was partially suspended pending negotiations with the complainant for a strip of land from said lots required by the city for the purpose of widening Wall street, and these ended by the payment of upwards of $400 for the same to the complainant, when the work was proceeded with, and finished before December, 1901. The evidence conclusively shows that the complainant knew that this work was being done, and we think that he is estopped from questioning his liability for a portion of the expense, under our repeated decisions, which are cited by counsel.[1] It is only necessary, therefore, to discuss such questions as will aid in determining whether he is entitled to a reduction of the tax spread against these premises. The following questions are important in this connection:

[1] Viz.: *Byram* v. *City of Detroit,* 50 Mich. 56 (12 N. W. 912, 14 N. W. 698); *Baisch* v. *City of Grand Rapids,* 84 Mich. 666 (48 N. W. 176); *Lundbom* v. *City of Manistee,* 93 Mich. 170 (53 N. W. 161); *Goodwillie* v. *City of Detroit,* 103 Mich. 283 (61 N. W. 526); *Duffy* v. *City of Saginaw,* 106 Mich. 335 (64 N. W. 581); *Atwell* v. *Barnes,* 109 Mich. 10 (66 N. W. 583); *Fitzhugh* v. *City of Bay City,* 109 Mich. 581 (67 N. W. 904); *Moore* v. *McIntyre,* 110 Mich. 237 (68 N W. 130); *Smith* v. *Carlow,* 114 Mich. 67 (72 N. W. 22); *Township of Walker* v. *Thomas,* 123 Mich. 290 (82 N. W. 48); *Tuller* v. *City of Detroit,* 126 Mich. 605 (85 N. W. 1080).

(1) May a given parcel of land be included in two or more assessment districts?

(2) Are the restrictions of 25 and 5 per cent. limitations upon a single improvement only, all improvements of a particular class, or all improvements of all classes?

(3) What is to be taken as the basis of valuation for the special assessment?

1. It is obvious that it is impracticable to limit a corner lot to one assessment district, except by the arbitrary method of dividing the lot by some sort of an imaginary line, having one terminus at the corner of the lot where the streets intersect and the other at such place as the council shall designate; and it is apparent that the entire premises used as a parcel fronting on both streets share in the benefit to be derived from the use of the improvement upon either street, be it sewer, pavement, or any of the utilities, such as water or gas. When the benefits are apportioned by frontage, the total cost of the two improvements would fall upon the entire parcel, whichever method might be adopted, unless it be where there is such a disparity of cost that a levy of the assessments separately might exceed the statutory limit upon one parcel and fall below it on the other. We are of the opinion that it was competent for the council to say that this entire parcel was benefited by both improvements, and to assess it for each, provided it did not impose a greater burden than the statute permits; and it follows that the land may be in two assessing districts. We understand that the case of *Boehme* v. *City of Monroe*, 106 Mich. 401 (64 N. W. 204), does not hold to the contrary.

2. It is urged that a given parcel cannot be assessed for more than 25 per cent. of its valuation in the aggregate, or more than 5 per cent. in one year, for improvements; and it is plausibly urged that, if it were otherwise, it might be assessed for more than its value. On the other hand, counsel for the defendant contend that these limitations apply to a single improvement. The statute pointedly refers to "any one improvement." See 1 Comp. Laws, §

3196. We have held that 1 Comp. Laws, §§ 3196 and 3295, should be construed together, and that the former fixes a limit of 25 per cent. for one improvement, and the latter a limit of 5 per cent. per annum for all assessments. See *Corliss* v. *Village of Highland Park*, 132 Mich. 152 (93 N. W. 254, 610, 95 N. W. 416). While the lots may be in two assessment districts, the annual tax for both improvements must be restricted to 5 per cent. of the assessed valuation as shown by the last preceding roll.

3. Is the valuation excessive? Section 3196 is as follows:

"In no case shall the whole amount to be levied by special assessment upon any lot or premises for any one improvement exceed twenty-five per cent. of the value of such lot or land, as valued and assessed for State and county taxation in the last preceding ward tax roll; any cost exceeding that per cent. which would otherwise be chargeable on such lot or premises shall be paid from the general funds of the city."

What is meant by the "last preceding ward tax roll?" Counsel for the complainant contend that it must refer to the last roll of the ward upon which the taxes for State, county, and school purposes have been spread, while counsel for the defendant maintain that a ward roll which has passed the board of review, and is therefore fixed, so far as to become the unalterable assessment upon which State, county, and school taxes must be spread, is within the language of this statute. We incline to the opinion that the statute was intended to refer to the assessment contained in the last general roll, and by this is meant a completed roll, upon which State, county, and school taxes have been spread. In both sections—3196 and 3295 —the term "last preceding [tax or assessment] roll" is used. In the latter case it is quite clear that it does not mean the roll of the current year, although the term "assessment roll" is used, for, if so, what is meant by the words "last preceding?" In the former, the term "tax roll" is used, and the roll referred to is called in the act the "December tax roll." Section 3318.

Had the lots 1 and 2 been assessed as one parcel on the December, 1900, roll, we should have little difficulty in determining the amount that complainant should pay upon this tax. But they were not. Lot 3 was included with them, and all were assessed at $2,500. Complainant's counsel suggest an apportionment of the valuation of 1900 according to superficial area. Upon this basis this property would be valued at $1,363. But, while these two lots had a front of 165 feet on Wall street and 100 on Main, lot 3 has a front of only 50 feet on Main street, and no front on Wall. Moreover, the complainant has sold lot 3 for $1,800. The law does not require the adoption of this method. Neither does it expressly authorize the council to make a new assessment. What the council apparently did was to take the assessment roll of 1901, in which the property was assessed at $3,000, as a basis. Moreover, the complainant admits that the lots are worth $3,000. Yet he asks that they be assessed at about one-third of that price, while presumably his neighbors are assessed at a much higher rate. This is not equity. He is before us asking equity, and that he be relieved from an excessive assessment. If he is to be relieved, it must be upon the basis of what is equitable. We are of the opinion that the taxes chargeable against him on each of the two assessments should not exceed $750, of which the defendants should collect not exceeding one-fifth of $750 upon this roll, that being 5 per cent. of $3,000.

The decree will be modified in accordance with this opinion. Complainant will recover costs of the circuit court against the city, and the defendant city will recover costs of this court against him. No costs for or against the treasurer will be allowed.

The other Justices concurred.