## W. F. STEWART CO. *v.* CITY OF FLINT.

1. Municipal Corporations—Public Improvements—Local Assessments—Correction of Irregularities—Power of Legislature.

    It is entirely within the power of the legislature to correct any error in a local assessment which does not in effect work any injury to the taxpayer.

2. Same—Special Assessments—Irregularities—Effect.

    Where, after the contract for the building of a sewer was let, a change in the depth of the sewer was made by reducing it and the contract price was proportionately reduced without any readvertisement, so that the question of the actual lawful cost of the sewer cannot be determined, the city is not entitled to a decree for the amount assessed to each of the several owners of land in the special assessment district, though the property is still subject to a new assessment if there can be found or provided legislative authority for ascertaining what in fact were the actual benefits of the property.

3. Same—Assessments—Restraining Enforcement—Laches.

    Equity will not relieve from a special assessment a landowner who has stood by and permitted a local improvement to be made, knowing that such improvement was to be compensated by a special assessment upon a district in which his property is located.

4. Same — Sewer — Public Improvement — Local Assessment — Benefits.

    That a sewer was carried to a point where turning it into the river would affect the public health as little as possible does not necessarily demonstrate that it was built for the protection of the public health in the sense that it should become a public charge instead of its cost being assessed in part upon a special assessment district.

Cross-appeals from Genesee; Wisner, J. Submitted January 23, 1907. (Docket No. 85.) Decided April 2, 1907.

Bill by the W. F. Stewart Company and others against

the city of Flint and Milton C. Pettibone, city treasurer, to restrain the collection of a sewer tax. Defendants filed an answer in the nature of a cross-bill asking for a decree for the amounts of the assessments against complainants. From the decree rendered, both parties appeal. Reversed, and bill and cross-bill dismissed.

*Durand & Carton* and *E. L. Bray*, for complainants.

*Warren S. Rundell* (*Geer, Williams & Halpin* and *Brown & Farley*, of counsel), for defendants.

MONTGOMERY, J. This is a bill filed by complainants to restrain the collection of a special assessment upon property owned by the complainants for the construction of the " St. John Street Sewer," so-called. The bill alleges many irregularities in the proceedings providing for the construction of the sewer. It also alleges that the sewer was constructed mainly in the interests of the public health of the entire community, and that, notwithstanding this fact, 75 per cent. of the entire cost of the sewer was levied upon property in the assessment district, and that this was fraudulent conduct on the part of the common council. The defendants filed a cross-bill, denying the charge of fraud, and asking that a decree for the amount of the assessment be made against the various complainants for the amount assessed to each. In the court below, a decree was entered, restraining the defendants from collecting the tax, and dismissing the cross-bill; the court, however, holding that the city had a right to levy an assessment against the local district. Both parties have appealed; the defendants from the decree entered, and the complainants from that part of the decree which holds that the city has a right to levy the assessment against the local district.

The irregularities in the proceedings are numerous, and it is not contended that the statute was in all respects complied with. The ordinance requires a yea and nay vote, determining the necessity of the public improve-

ment, and providing for the assessment of the tax for the improvement. The action originally taken was not taken by a yea and nay vote. The contract, as originally let, was let to Lynch & Lynch for an aggregate sum of $26,153.30. It subsequently transpired that a sewer of six feet less depth than that originally contemplated would answer all requirements, and the contract with Lynch & Lynch was modified by reducing the contract price proportionately. Later on a new assessment was made, by which an assessment district was fixed. Seventy-five per cent. of the cost of the sewer was apportioned to the assessment district, and 25 per cent. was apportioned to the city at large. Commissioners were appointed to make the assessment, and this resolution was adopted by a yea and nay vote, as required by the charter.

Under section 9 of chapter 20 of the charter (Act No. 346, Local Acts 1901), any special assessment, which is in the opinion of the council invalid by reason of irregularity or informality in the proceedings, may be validated by a new assessment for the same purpose for which the former assessment was made. This statute is very broad. It is entirely within the power of the legislature to correct any error in an assessment which does not in effect work any injury to the taxpayer. *Farr* v. *City of Detroit*, 136 Mich. 200; 1 Cooley on Taxation (3d Ed.), p. 510. There would be little difficulty, therefore, in sustaining this reassessment as entirely valid, except for the fact that, in providing for a modification of this contract, in substantial respects the council exceeded its authority, and ignored the provisions of section 3 of chapter 20 of the charter. There is no doubt that, so far as the case is affected by the informality in the proceedings, the property is still subject to a new assessment, if there can be found or provided legislative authority for ascertaining what in fact were the actual benefits to the property within the assessment district from the construction of this sewer. But the failure to advertise and let the contract as it was modified leaves the question of the actual law-

ful cost of the sewer not susceptible of determination, and
for this reason the prayer of the cross-bill cannot be
granted. See *Auditor General* v. *Stoddard*, ante, 329.

As to the relief asked by the complainants, the record
discloses the fact that some of the complainants were very
active in securing the action of the council in providing
for this sewer. They were the proprietors of the Oak
Park Subdivision, so-called, a portion of the city devoted
to manufacturing, and it was thought to be exceedingly
important that the sewer be provided for this district at as
early a date as possible. With this in view, some of the
complainants urged action by the council, and asked that
this action be taken, even if it was thought necessary to
provide for assessing the whole cost upon this Oak Park
Subdivision, but with the understanding that the council
would later take up and consider what was equitable and
fair as between the different sections of the city, and ap-
portion such part as should equitably be borne by the
city at large to the whole city. It was in pursuance of
this action, thus urged by the owners of property in Oak
Park Subdivision, that the original action of the council
was taken. Later on the subject came before the council,
and it was then decided that the portion which the city
should bear was 25 per cent., and the remaining portion
should be borne by the special assessment district. Not
only is this true, but the parties stood by, took no action
until after the work was entirely completed, and then
filed this bill. So far as the complainants' right to invoke
this remedy is concerned, the question is ruled against
them in various cases. Beginning with the case of *By-
ram* v. *City of Detroit*, 50 Mich. 56, this court has
steadily refused to grant relief to a complainant in equity
who has stood by and permitted a special improvement to
be made, knowing that such improvement is to be com-
pensated by a special assessment upon a district in which
his property is located. *Lundbom* v. *City of Manistee*,
93 Mich. 170; *Goodwillie* v. *City of Detroit*, 103 Mich.
283; *Atwell* v. *Barnes*, 109 Mich. 10; *Farr* v. *City of*

*Detroit*, 136 Mich 200. The last cited case is controlling of the question of the complainants' right to the relief sought.

It is strenuously argued in this case that the assessment was fraudulent, for the reason that this sewer as laid was really laid for the benefit of the health of the city at large, and to avoid polluting the waters of Flint river. It is, doubtless, true that it was thought necessary to carry this sewer to a point where by turning it into the river the public health would be as little affected as possible; but it does not necessarily follow that the sewer was built for the protection of the public health, in the sense that it should become a public charge. It is true of all sewer construction that a public nuisance is to be and must be avoided, but this has never been thought to prevent the levying of a tax for its construction upon a special assessment district. In view of the previous history of the sewer construction in Flint, and in fact upon this whole record as made, we are not able to find any evidence of fraud, or even of unfairness, in the method adopted for providing for the payment for this sewer. The only reason why we are forced to withhold affirmative relief to the defendants is that we do not find the amount of the benefit to these various complainants to have been determined by the legal method pointed out by the statute. It is, no doubt, within the power of the legislature to provide a means for a determination of the benefits actually received, if, in view of this opinion, payment shall be withheld.

The complainants' bill will be dismissed, and the defendants' will also be dismissed, without prejudice to any further proceedings which may lawfully be had in the premises.

BLAIR, OSTRANDER, HOOKER, and MOORE, JJ., concurred.