AUDITOR GENERAL *v.* BISHOP.

1. MUNICIPAL CORPORATIONS—TAXATION—SPECIAL ASSESSMENTS—
JURISDICTIONAL DEFECTS.
    Under the provisions of the charter of the city of Port Huron
    for assessment of sewer taxes, the action of the city engineer
    in preparing an assessment roll in pursuance of the resolu-
    tion of the council and in apportioning the tax according to
    benefits is a compliance with the jurisdictional requirements
    except in so far as he may have based his action upon the
    areas of the several parcels.

2. SAME—BASIS.
    An assessment of special taxes for constructing a sewer involv-
    ing a large territory, divided into city lots that are subject
    to various distinctions, is invalid where it is based on the
    area of each lot instead of the actual benefit.

3. SAME—TAXATION—RES JUDICATA—JUDGMENT.
    A decree sustaining the validity of one of several annual in-
    stallments of a special tax is conclusive as to remaining in-
    stallments objected to on similar grounds.

4. SAME—SPECIAL TAX—LACHES—ESTOPPEL.
    Although the defendant in proceedings for the sale of land for
    taxes made no objection to the construction of a sewer on
    the ground that the assessment was invalid, he is not bound
    by laches, under a statute which permits a contest at the
    foreclosure of the tax lien.

Appeal from St. Clair; Law, J.   Submitted February
25, 1910.   (Docket No. 112.)   Decided April 1, 1910.
Rehearing denied May 9, 1910.

Petition by Oramel B. Fuller, auditor general, for the
sale of land delinquent for taxes:   On objections of
Arthur G. Bishop and Frederick D. Sanborn.   From a
decree for petitioner, defendants appeal.   Reversed, and
petition dismissed as to defendant Bishop, and affirmed
as to defendant Sanborn.

*John E. Bird*, Attorney General, and *Joseph Walsh*, City Attorney, for petitioner.

*Stevens, Graham & Stevens* (*William T. Mitchell*, of counsel), for defendants.

HOOKER, J. In the year 1904 the assessment in controversy in this case was made. It was for a sewer construction tax, and covered 376 acres of land. The benefits were assessed at a flat rate per square foot. The sewer was constructed at a cost of $71,250, one-eighth of which was paid by general tax, which cost was made payable in four annual installments. The auditor general filed the petition in this cause to obtain a decree against delinquent lands, and several landowners in Port Huron contested this sewer tax. The trial judge sustained the tax, and two defendants have appealed: Sanborn, who appears to have been owner when the assessment was made, and Bishop, who purchased his land later and after his grantor had paid two assessments. The third installment is involved in both instances.

The contestants urge:

(1) That the tax is void for the reason that no assessment of benefits was made by the common council.

(2) That this was an unlawful assessment, because made upon a basis of a flat rate per square foot.

The petitioner contends:

(1) That the assessment was made by the council.

(2) That the council must be held to have found that a flat rate was in compliance with the provisions of law.

(3) That the validity of the tax is *res adjudicata* as to Sanborn, and the right to question it has been waived by Bishop and his grantor.

1. **Want of Jurisdiction.** It is stated by the circuit judge that proceedings prior to assessment were not attacked "for any failure of jurisdiction up to the period of assessment," and we shall act upon that assumption. Apparently the matter of this sewer came regularly to the city engineer in his official capacity. The charter of Port Hu-

ron (Act No. 390, Local Acts 1885, chap. 17, § 4) provides:

"Upon the awarding of such contract the council shall direct the engineer to make out a special assessment roll to defray the cost and expense of doing such work, or making such improvement, and the incidental expenses therein, as fixed in the manner aforesaid."

The engineer filed the following certificate:

"I, W. W. Phelps, city engineer, do hereby certify that I have included in the annexed assessment roll all the real estate in the assessment district as fixed and determined by the common council together with the name of each owner, or occupant of each lot, tract and parcel of land described in said roll so far as I could ascertain the same after diligent search and inquiry. And I further certify that I have assessed upon each description of land its just proportion of the amount directed to be raised by the common council. I further certify that I have apportioned the amounts assessed against each parcel of land according to the benefits resulting to each of said lots, tracts and parcels of land and that in so doing I have taken into account the area of the same. I further certify that I have assessed to the city of Port Huron its just proportion of the cost and expense of the construction of said sewer and the expenses incident thereto in like manner as I have assessed the private property mentioned and described in said roll."

The action of the common council is shown by the following resolution which was passed by that body:

"The confirmation of the roll is in these words: By Alderman Burkholder: Resolved, that the special assessment roll No. 155 for constructing a sewer in Tenth, Beard and Twentieth streets from the St. Clair river to a point 75 feet north of Union street, as reported by the city engineer, be, and the same is hereby, accepted and adopted and confirmed."

It is pointed out that in the certificate the words "and that in so doing I have taken into account the area of the same" were not required by section 7 of the charter as amended (Act No. 539, Local Acts 1903, chap. 17). Coun-

sel for petitioner say that these words should be treated as surplusage, while counsel for defendants ask us to hold that they are evidence that the council and engineer were acting under section 7 as it read before the last amendment, which then required their insertion, and that they conclusively show that benefits were assessed upon no other consideration, and that the assessment was therefore void, under the cases of *Thomas* v. *Gain*, 35 Mich. 155 (24 Am. Rep. 535), and *Auditor General* v. *O'Neill*, 143 Mich. 343 (106 N. W. 895). Counsel seem to attach much importance to a difference in the language of the two sections relating to the duties of the engineer. Before the amendment it provided that the engineer should "make out a special assessment roll," whereas in the amended section the words are that he make out "a proposed assessment roll;" the contention being that in the former it is the duty of the engineer to assess, while in the latter the assessment of benefits must be determined by the council. We are of the opinion that what was done by this engineer as shown by his certificate was equivalent to what was required by the amended sections 5 and 7, except as it may be affected by the words quoted relating to the area, and that the resolution of the council adopting and confirming the assessment is such a determination by the council as to comply with the law substantially. We feel justified therefore in overruling defendants' first point.

2. Was this Assessment Void Because of the Flat Rate? If the record shows upon its face that the assessment was based upon the flat rate alone, it must be admitted to be an irregular assessment. It must not be understood that we can go into a trial of the question of the justice of the assessment upon oral testimony, but as we did in the case of *Auditor General* v. *O'Neill, supra*, we may say from the nature of the property as described in the record that a flat rate could not be a lawful apportionment of benefits. We think that we should say that in this case for the reason that the amount of territory involved and the fact that it is divided into city lots, etc.,

forbid the possibility that such assessment was according to benefits. In that respect the case is practically identical with the *O'Neill Case.*

In *Walker* v. *City of Detroit,* 138 Mich. 639 (101 N. W. 847), we were not able to say from the record that the assessment was not according to benefits, although at a uniform rate per square foot, inasmuch as the territory involved therein was a very limited tract, in the heart of Detroit, where there was little chance for distinction.

**Res Adjudicata.** It has appeared that this tax was made payable in four installments. Sanborn paid the first installment for the year 1904. He contested the payment for the year 1905 in the auditor general's proceeding for that year, raising the same points that he has raised in this case. It is clear that the questions are *res adjudicata* as to Sanborn, against whom this assessment has been once sustained.

**Bishop's Defense.** It is claimed by petitioner's counsel that both defendants should be estopped by laches from questioning their assessments. This proceeding was one in which there was publication and an opportunity for review. The defendants permitted this work to be undertaken and completed at an expense of over $70,000. They took no steps to prevent such action, but waited until an effort was made to foreclose upon the premises, apparently being willing to receive the benefits of this sewer and let others pay their share of the cost. We have often refused to relieve parties under such circumstances. The following cases are in point: *Byram* v. *City of Detroit,* 50 Mich. 56 (12 N. W. 912, 14 N. W. 698); *Harwood* v. *Huntoon,* 51 Mich. 639 (17 N. W. 216); *Brown* v. *City of Grand Rapids,* 83 Mich. 101 (47 N. W. 117); *Lundbom* v. *City of Manistee,* 93 Mich. 170 (53 N. W. 161); *Moore* v. *City of Detroit,* 103 Mich. 292 (61 N. W. 529); *Goodwillie* v. *City of Detroit,* 103 Mich. 283 (61 N. W. 526); *Duffy* v. *City of Saginaw,* 106 Mich. 339 (64 N. W. 581); *Atwell* v. *Barnes,* 109 Mich. 10 (66 N. W. 583); *Fitzhugh* v. *Bay City,* 109 Mich. 581 (67 N. W. 904);

*Moore* v. *McIntyre*, 110 Mich. 239 (68 N. W. 130);
*Smith* v. *Carlow*, 114 Mich. 67 (72 N. W. 22); *Township of Walker* v. *Thomas*, 123 Mich. 290 (82 N. W.
48); *Auditor General* v. *Melze*, 124 Mich. 285 (82 N. W.
886); *Tuller* v. *City of Detroit*, 126 Mich. 605 (85 N.
W. 1080); *Township of Swan Creek* v. *Brown*, 130
Mich. 382 (90 N. W. 38); *Gates* v. *City of Grand
Rapids*, 134 Mich. 96 (95 N. W. 998); *Nowlen* v. *City
of Benton Harbor*, 134 Mich. 404 (96 N. W. 450); *Farr*
v. *City of Detroit*, 136 Mich. 200 (99 N. W. 19); *Shaw*
v. *City of Ypsilanti*, 146 Mich. 712 (110 N. W. 40); *W.
F. Stewart Co.* v. *City of Flint*, 147 Mich. 700 (111 N.
W. 352); *Constantine* v. *City of Albion*, 148 Mich.
403 (111 N. W. 1068); *Jones* v. *Gable*, 150 Mich. 30 (113
N. W. 577).

It is contended that this rule should not be held applicable to Bishop's land. This is a proceeding *in rem* to enforce a lien for a tax against premises upon which Bishop
held a mortgage, and which, if valid, would have priority over his mortgage. But the rule stated has usually
been restricted to cases where relief has been sought in
equity, and has been denied upon the principle that: "He
who seeks equity must do equity," and except in drain
cases, which seem to have been considered exceptional,
the rule has not been applied against a defendant.

In *Auditor General* v. *Calkins*, 136 Mich. 1 (98 N. W.
742)—a paving case arising upon defense to foreclosure
proceedings commenced by the auditor general—Mr. Justice GRANT sustained the objection, saying:

"This is not a case where a court of equity will leave a
party complainant to his remedy at law. The defendant
is now for the first time brought into court and given
an opportunity to contest the validity of the proceedings. The statute gives him the right to wait until the
State moves to foreclose the tax lien upon his property,
and then gives him the right to appear and make any objections which were fatal to the proceedings. He cannot,
therefore, be charged with laches. If the statute, as formerly it did, gave a deed to the tax purchaser, and gave the

taxpayer no opportunity to appear in court to contest it, we might then apply the rule, as in other cases, that equity will not afford him relief, but will leave him to his remedy at law."

This was followed in *Murphy* v. *Dobben*, 137 Mich. 565 (100 N. W. 891), and *W. F. Stewart Co.* v. *City of Flint*, 147 Mich. 697 (111 N. W. 352), and the case of *Auditor General* v. *Stoddard*, 147 Mich. 332 (110 N. W. 944). Under these authorities defendant may maintain his defense, and the cause is within the holding in the *Case of O'Neill*.

The decree is reversed, and bill dismissed as to the lands of Bishop, with costs. In other respects it is affirmed, with costs.

MONTGOMERY, C. J., and OSTRANDER, BLAIR, and STONE, JJ., concurred.