ATTWOOD BRASS WORKS *v.* CITY OF GRAND RAPIDS.

1. MUNICIPAL CORPORATIONS—DEEDS—CONSTRUCTION.

A clause in a deed conveying land to a city on condition that a bridge be built, and providing that "no special assessment for that purpose shall be levied upon premises of the party of the first part," is construed to apply only to the initial improvement and not to future alterations and improvements.[1]

---

[1]Municipal Corporations, 28 Cyc. p. 1131.
On loss of right to contest assessment in proceeding for street or sewer improvement by waiver, estoppel, or the like, see note in 9 A. L. R. 634 *et seq.*

2. SAME—TAXATION—FAILURE TO OBJECT TO IMPROVEMENT—ES-
TOPPEL.

> Where a landowner stood by and not only made no ob-
> jection to a certain public improvement, but suggested to
> the city officials that the plan be changed, which was done
> at a considerable cost, it is estopped to question the assess-
> ment therefor after the completion of the improvement.[2]

3. SAME.

> Where a landowner suggested that a public improvement
> be made in a certain way, and made no objection thereto
> before it was finished it is estopped to question the assess-
> ment therefor on the ground that it should be made a
> general assessment instead of a local one.[3]

Appeal from superior court of Grand Rapids;
Verdier (Leonard D.), J.      Submitted January 21,
1925.      (Docket No. 111.)      Decided April 3, 1925.

Bill by the Attwood Brass Works against the city
of Grand Rapids and others to enjoin the enforcement
of a special assessment.      From a decree dismissing
the bill, plaintiff appeals.      Affirmed.

*Edgar A. Maher*, for plaintiff.

*Ganson Taggart* (*Charles A. Watt*, of counsel), for
defendants.

BIRD, J.      Plaintiff filed its bill for the purpose of
restraining the city of Grand Rapids from enforcing
a special assessment against its property.      Relief was
denied by the superior court and it appeals.

The controversy arose out of the following facts:
Grand river extends through the city of Grand Rapids
in a northerly and southerly direction.      On the west
side of the river Front street is near and parallels
the river, leaving a narrow strip of land between the
river and Front street.      Most of the east and west
avenues terminate at Front street.      Mr. William T.

[2]Municipal Corporations, 28 Cyc. p. 1173; [3]Id., 28 Cyc. p. 1173.

Powers formerly owned the narrow strip lying between the river and Front street in the vicinity of the intersection of Sixth street, and in 1885 he donated to the city a continuation of Sixth street to the river on condition that the city could construct a bridge over the river.  The deed was accepted by the city and the bridge built.  Several years later the city erected flood walls along the bank of the river, and this narrowed the river, leaving over 100 feet additional land between the flood walls and the shore.  This space was filled in with earth, and materially widened the narrow strip lying between the river and Front street, leaving a long section of the bridge over dry land. In 1919 the city decided to improve Sixth street from Front street up to the bridge.  After the estimates were made a notice of hearing before the city commission was given and Mr. Attwood, plaintiff's grantor, appeared and objected to the improvement because it would leave about 70 feet of the old bridge on Sixth street which was of no use, and which interfered with the free use of his property.  Mr. Attwood and others interested protested in writing, and requested the city to remove that part of the bridge which was no longer needed, and improve Sixth street from Front street to the flood wall.  In pursuance of this petition and protest the city abandoned that proceeding and instituted another which complied with Mr. Attwood's suggestion, and gave notice of another hearing in the new proceeding.  Mr. Attwood, representing plaintiff, attended the hearing and announced his satisfaction with the change, and expressed his satisfaction of the proceeding.  This plan was carried out and part of the old bridge removed, and the street was improved from Front street through to the flood wall, and the cost thereof was provided for by a special assessment.  Plaintiff then refused to pay its tax, and filed this suit to restrain the city from enforcing it.  The

material part of the deed from Powers to the city
follows:

"Witnesseth: That the said parties of the first part
for and in consideration of the construction of a good
and substantial bridge across Grand river by the
party of the second part to which the premises hereby
conveyed will be an approach from North Front street
in said city, have granted, bargained, sold, remised,
released, aliened and confirmed, and by these present
do grant, bargain, sell, remise, release, alien and con-
firm unto the said party of the second part, forever,
all that certain piece or parcel of land situate and being
in the city of Grand Rapids, county of Kent and State
of Michigan, and described as follows, viz.: (Descrip-
tion.)    To be used as an approach to and a bridge
across Grand river, but for no other purpose whatever,
and upon the condition that said bridge shall be built
within three years. from the 25th day of April, 1885,
and forever after maintained without interruption of
more than one year at a time in case of accident or
destruction of said bridge by fire or water.    And it
is expressly understood and agreed that said approach
to said bridge over the premises aforesaid shall be
constructed by the party of the second part and com-
pleted ready for use in connection with said bridge
in a manner similar to the approach to the east end
of Fulton street bridge across Grand river, and shall
be done at its own expense, and that no special assess-
ment for that purpose shall be levied upon premises
of the party of the first part."

Plaintiff makes the point:

1. That the provision in the deed that no special
assessment shall be levied against the land of the
grantor renders the present assessment invalid.    The
trial court construed this provision as applying only
to the initial improvement and held that it did not
have reference to future alterations and improve-
ments.    It was further held that if the contract con-
templated more than this, that part of the deed was
void, as the city could not convey away its legislative
function; citing *Leggett* v. *City of Detroit*, 137 Mich.

247.   It will be sufficient to say that this court is in accord with this conclusion.

2. After reviewing at some length the merits of the objections, the trial court concluded that plaintiff was estopped to question its assessments after inducing the city to change its plan at a considerable cost to itself, and after standing by and making no objection to the improvement until after it was completed.   We are likewise in accord with the court in this conclusion.   This court has repeatedly refused to aid in equity one who stands by and makes no objection to an improvement until after it has been made.

Cooley in his work on Taxation (vol. 4, 4th Ed.), § 1613, says of this rule:

"It sometimes happens that a party who complains of illegal taxation has been so connected with the proceedings in voting, laying, or collecting the same, that it would be unjust and inequitable to others or to the public that any remedy should be given him in respect to the illegality.   Such a case would exist if one in respect of some interest of his own should petition for or otherwise actively encourage the levy of the tax or assessment of which subsequently he makes complaint.   *   *   *   To quote from a decision recently made by the supreme court of Indiana:

" 'It is a general rule, now fully accepted in this State, that where the owner of property subject to assessment for public improvements stands by and makes no objection to such improvements, which benefit his property, he may not deny the authority by which the improvements are made, nor defeat the assessment made against his property for the benefits derived. And this is true both where the proceedings for the improvement are attacked for irregularity, and where their validity is denied, but color of law exists for the proceedings.'   *Board of Com'rs of Cass Co.* v. *Plotner*, 149 Ind. 116 (48 N. E. 635)."

This principle was invoked in the early history of this court, where it said:

"We do not think that a court of equity can properly

interfere to relieve a party, on the ground that assessments are irregular and unauthorized by the strict provisions of law, where they are substantially authorized by and made in reliance upon his own express agreement." *Jackson* v. *City of Detroit,* 10 Mich. 248.

And the court has been affirming and re-affirming this doctrine ever since the early case, as the following authorities will show: *Motz* v. *City of Detroit,* 18 Mich. 495; *Byram* v. *City of Detroit,* 50 Mich. 56; *Brown* v. *City of Grand Rapids,* 83 Mich. 101; *Lundbom* v. *City of Manistee,* 93 Mich. 170; *Atwell* v. *Barnes,* 109 Mich. 10; *Fitzhugh* v. *City of Bay City,* 109 Mich. 581; *Moore* v. *McIntyre,* 110 Mich. 237; *Goodwillie* v. *City of Detroit,* 103 Mich. 283; *Farr* v. *City of Detroit,* 136 Mich. 200; *Shaw* v. *City of Ypsilanti,* 146 Mich. 712; *Gates* v. *City of Grand Rapids,* 134 Mich. 96; *W. F. Stewart Co.* v. *City of Flint,* 147 Mich. 697, 700; *McKee* v. *City of Grand Rapids,* 203 Mich. 527.

Under these holdings, if plaintiff, with knowledge, had simply sat by and made no objection until after the improvement was completed, it would be barred from making the objections which appear in the bill of complaint.   But in this case it was something more than mere inaction.   Plaintiff requested the improvement be made in a certain way, and the city abandoned its first proceeding and complied with its suggestion at a considerable cost to itself in removing about 70 feet of the bridge so plaintiff could the better utilize its own property.   This serves as an additional reason why plaintiff should now be estopped to complain of the assessment.

3. It may be well to notice another objection made by plaintiff, that the street is an approach to a bridge; the cost of which should be made by a general assessment instead of a local one.   Whatever merit there might be, considering this question by itself, we think

plaintiff has estopped itself from making this argument by suggesting that the improvement be made in a certain way and not objecting before it was finished. *City of Greensburg* v. *Zoller*, 28 Ind. App. 126 (60 N. E. 1007). In a valuable note in 9 A. L. R. 724, on the question of waiver in such cases, it is said:

"Where landowners do not avail themselves of the opportunity provided by law to present their grievances before the city council, they are bound by the assessment unless the proceedings are void. Under these circumstances, an injunction to restrain the collection of an assessment for the construction of a sewer, on the ground that it is a general improvement and not a local one, will not be granted."

The conclusion in *City of Greensburg* v. *Zoller* is based upon the fact that plaintiffs had waived their right to make that defense by having failed to make objection thereto at the proper time.

We think the decree of the trial court is right and it will be affirmed, with costs of both courts to defendants.

MCDONALD, C. J., and CLARK, SHARPE, MOORE, STEERE, FELLOWS, and WIEST, JJ., concurred.