LOWRIE & ROBINSON LUMBER CO. *v.* CITY OF DETROIT.

1. MUNICIPAL CORPORATIONS — DETROIT CHARTER — DEDICANT OF STREET NOT DEPRIVED OF RIGHT TO CREDIT BY NEGLECT OF AUTHORITIES.

   The neglect of the authorities of the city of Detroit to certify the assessed value of land dedicated for street purposes does not operate to deprive the dedicant of his right to a credit on the assessment for widening the street, as provided for in the charter (title 6, chap. 3, § 15).

[1]Municipal Corporations, 28 Cyc. p. 1131.

2. Witnesses — Assessing Officers Should Not be Cross-Examined as to Process of Assessment in Absence of Fraud.
   In a suit to restrain the enforcement of an assessment for the widening of a street, assessing officers should not be cross-examined as to the mental processes used in making the assessment, where fraud is not involved.

3. Taxation — Party Remaining Silent Until After Improvement Paid For May Not Attack Assessment Therefor in Court of Equity.
   Where plaintiff received its share of the compensation awarded in condemnation proceedings for widening a street, and remained silent during the time the assessment was open to review, of which it had notice, it may not, after the improvement is paid for, complain in a court of equity that the assessment is unenforceable because excessive.

Appeal from Wayne; Murphy (Alfred J.), J.     Submitted October 14, 1926.     (Docket No. 104.)     Decided December 8, 1926.

Bill by the Lowrie & Robinson Lumber Company against the city of Detroit to set aside an assessment. From a decree for plaintiff, defendant appeals.     Reversed, and bill dismissed.

*Yerkes, Simons & Goddard* and *C. Upton Shreve,* for plaintiff.

*Walter Barlow* (*Charles P. O'Neil,* of counsel), for defendant.

The charter of the city of Detroit contains the following provision:

"Whenever any person shall deed or dedicate land to the city for a street or part of a street for the use and benefit of the public, and the same shall be duly accepted by the proper authorities, such authorities shall at the time of such acceptance ascertain the last assessed value of the land so deeded or dedicated

---

²Witnesses, 40 Cyc. p. 2492; ³Municipal Corporations, 28 Cyc. pp. 1174, 1187 (Anno).

according to the area and certify or cause to be certified the same upon the plat, deed or instrument containing the dedication. Thereafter whenever the remaining property of the dedicant which abuts on the land so deeded or dedicated shall be assessed to defray the cost of extending or widening the street for which said land was deeded or dedicated, there shall be credited upon said assessment an amount equal to the certified assessed value of the land so deeded or dedicated." Detroit Charter, tit. 6, chap. 3, § 15.

On May 7, 1923, Robert Oakman filed the plat of the Robert Oakman's Livernois avenue and Dexter avenue subdivision in which he dedicated a strip of land for Doris avenue. The municipal authorities did not certify the last assessed value on the plat although it was readily ascertainable. December 18, 1923, the common council of the city by appropriate resolution decided to widen Doris avenue. This required the taking of lands of plaintiff, Oakman, and others. Condemnation proceedings were instituted, plaintiff appeared but did not contest; it was awarded $995 which was paid to and accepted by it. The common council decided that 15 per cent. of the cost of widening should be paid by the city and the balance assessed on the abutting property. The board of city assessors made the assessment, gave the required notice of hearing at which plaintiff did not appear, and after waiting the required time reported the roll to the common council. Plaintiff did not appear before the council and the roll was confirmed. After being presented a bill for its assessment, plaintiff filed this bill to restrain its enforcement. From a decree granting such relief, the city appeals.

FELLOWS, J. (after stating the facts). Plaintiff called as a witness the street opening clerk in the city assessor's office and examined him at length. From his testimony it would appear that he worked out the detail of the assessment. The assessment was on a

front foot basis; on the lands of plaintiff, it was $3.25 a foot front. The testimony of the witness was to the effect that if Oakman was credited with the assessed value of the strip of land dedicated by him as of the date of the dedication he would be entitled to a credit of $3.78 a foot front, and, therefore, would have no assessment to pay and that the board decided to assess his land $1 a foot front and this in addition to his credit and that this was arbitrarily done. The neglect of the municipal authorities to certify the assessed value of the strip dedicated on the plat does not operate to deprive the dedicant of his right to a credit, nor does the fact that he has contracted to sell the land so operate. He is the owner of the legal title to the land against which the assessment is levied. While there might be some grounds for granting relief if Oakman was here complaining it is difficult to perceive that plaintiff was harmed by the arbitrary increasing of the assessment on the Oakman property. But we shall not rest decision on this feature of the case, as we do not feel that the practice of calling assessing officers and cross-examining them as to the mental processes used in making the assessment should be encouraged, at least where fraud is not involved. In *Newport Mining Co.* v. *City of Ironwood,* 185 Mich. 668, it was said by Mr. Justice OSTRANDER, speaking for the court:

"It was held in *Chicago, etc., R. Co.* v. *Babcock,* 204 U. S. 585 (27 Sup. Ct. 326), cited by plaintiff, that in an independent proceeding attacking the judgment of an assessing board it is improper to cross-examine the members in an attempt to exhibit confusion in their minds as to the method by which the result was reached."

The proceedings are regular; no fraud is alleged and no claim is made that any of plaintiff's constitutional rights have been invaded. In the final analysis plaintiff's claim is that it is assessed too much.

After the roll was completed, notice as required by the charter was given, and, although it had 12 days thereafter to make objection, plaintiff made no effort to have the amount reduced. The roll was reported to the common council, and no protest was there made. It was not until the improvement was paid for, a portion thereof being paid to plaintiff, and a statement was sent to plaintiff for the amount assessed against its lands, and some months had elapsed thereafter, that this bill was filed. Having remained silent during the time the assessment was open to review by the constituted tribunals under the charter, having stood by until the improvement had been paid for, and itself having received its share of the compensation awarded on the condemnation proceedings, it may not now be heard in a court of equity to say that its assessment is excessive and for that reason unenforceable. *Brown* v. *City of Grand Rapids,* 83 Mich. 101; *Lundbom* v. *City of Manistee,* 93 Mich. 170; *Goodwillie* v. *City of Detroit,* 103 Mich. 283; *Atwell* v. *Barnes,* 109 Mich. 10; *Gates* v. *City of Grand Rapids,* 134 Mich. 96; *Shaw* v. *City of Ypsilanti,* 146 Mich. 712; *W. F. Stewart Co.* v. *City of Flint,* 147 Mich. 697; *Attwood Brass Works* v. *City of Grand Rapids,* 230 Mich. 271.

A decree will be here entered dismissing plaintiff's bill, with costs of both courts.

BIRD, C. J., and SHARPE, SNOW, STEERE, WIEST, CLARK, and McDONALD, JJ., concurred.