1. DRAINS—ESTABLISHMENT—PROCEEDINGS — NECESSARY PARTIES.

Persons liable to be assessed for benefits for the construction of a public drain are not necessary parties to the proceedings to establish the drain, but are first brought into the proceedings by the notice of the letting of the drain after its establishment and the designation of their lands as part of the assessment district.

2. SAME—NECESSITY—COMPENSATION—WAIVER OF RIGHTS.

Persons assessed for the benefits of a public drain can take no benefit from failure to include in the proceedings other persons having a right to be heard on the questions of necessity and compensation, since such persons may waive their rights without prejudice to the persons assessed for benefits.

3. SAME—APPLICATION—FREEHOLDERS — TENANTS BY ENTIRETIES.

A tenant by entireties is a freeholder under section 8787, 3 Comp. Laws, and has a right to sign the application for a public drain though his cotenant does not sign.

4. SAME—FREEHOLDERS—RECORD TITLE—NECESSITY.

It is not necessary that freeholders signing an application for a public drain shall hold under deeds that have been recorded.

5. SAME—SIGNING UNDER MISAPPREHENSION—EFFECT.

That certain of the freeholders signing an application for a

[1] The opinion filed on the original hearing in this case was withheld from publication pending the rehearing.

drain did so under a misapprehension of its effect, cannot render the petition ineffective to confer jurisdiction on the commissioner, the fact not appearing on the face of the application, though the proceedings might perhaps be attacked for that reason in the way pointed out by the statute, if the signers should not choose to waive the point.

6. SAME—APPLICATION—DESCRIPTION OF ROUTE—SUFFICIENCY.
 An application for a public drain which gives a "general description of the beginning, the route, and the terminus" of the drain is sufficient.

7. SAME—PROCEEDINGS—DEFECTS—CONDEMNATION PROCEEDINGS—RIGHT TO OBJECT.
 Where jurisdiction of proceedings to establish a public drain is once acquired, subsequent defects, only affecting the condemnation proceedings, do not concern persons whose only interest arises from being assessed for benefits.

8. SAME—BENEFITS—ASSESSMENT—NOTICE—NECESSITY.
 All persons whose lands are included within the assessment district created for a public drain are entitled to notice of review of the apportionment of benefits. Sections 4324, 4340, 2 Comp. Laws.

9. SAME—NOTICE—SUFFICIENCY.
 It is not sufficient notice to a wife to leave a notice with her for her husband, nor to one tenant in common to leave a notice with his cotenant, nor to a tenant by entireties (a wife) to notify her cotenant.

10. SAME — APPORTIONMENT OF BENEFITS — FRAUD — RELIEF IN EQUITY.
 Though relief may be had in equity in the case of actual fraud in the apportionment of benefits for a drain, such a case is not made out by testimony by complainants that they are assessed too much, that the lands of some of them are not benefited, and the like, as such testimony at most only tends to induce the court to substitute its judgment for that of the officers to whom the determination of such questions has been confided by law.

11. SAME—BENEFITS—APPORTIONMENT — MATTERS CONSIDERED.
 In apportioning the benefits of a public drain there are matters to be considered other than the mere reclamation of land, especially the influence of the drain upon the health of the locality, and it does not follow from the fact that a parcel of land has no standing water upon it that a drain will not benefit it, or that the commissioner, if he assess it, does not assess it
 152 MICH.—17.

upon the basis of benefits as required by the statute (§ 4350, 2 Comp. Laws); nor is it necessarily true that one near the head of a drain may not be benefited more than one near the outlet.

12. EQUITY—CHANCERY PRACTICE—MULTIFARIOUSNESS—NECESSITY OF OBJECTION.

Improper joinder of complainants having several claims will not be considered in this court where the question of multifariousness is not raised by the pleadings.

Appeal from Hillsdale; Chester, J. Submitted November 18, 1907. (Docket No. 145.) Decided January 31, 1908. Rehearing denied May 1, 1908.

Bill by Nelson W. Hinkley and others against S. Chase Bishopp, drain commissioner, and others to restrain the levy and collection of a drain tax. From a decree dismissing the bill, complainants appeal. Reversed as to certain complainants, and affirmed as to others.

*Barre, Smith & Chase* and *B. E. Sheldon*, for complainants.

*Clayton A. Powell*, Prosecuting Attorney, and *Spencer D. Bishopp*, for defendants.

HOOKER, J. The complainants in this cause are some of many whose premises have been assessed for benefits in proceedings to lay out and construct what is called "The Pleasant Lake Drain," in Hillsdale county. The lands assessed are held in severalty, except as a few are held by husband and wife by entireties, and one or two parcels are land of a deceased person which has not been partitioned. Counsel for complainants stated upon the hearing at circuit that they did not question the validity of the drain except so far as it should affect the assessments upon complainants' lands, from which, and the further fact that the bill contains no prayer that the drain shall be decreed invalid, we conclude that the object of the bill is, as its prayer indicates, only an injunction re-

straining any steps to enforce such assessments against the several complainants and their lands. The prayer fails to ask any other relief, except general relief. We must conclude, therefore, that the important question raised is whether these complainants or some of them should be relieved from their several assessments. Complainants' claims for relief are made to rest—

1. On alleged want of jurisdiction on the part of the commissioner to lay out the drain, and irregularities alleged to have caused a loss of jurisdiction if he acquired it.

2. Want of jurisdiction over the complainants or some of them.

3. Fraud in making these assessments.

The drain in question starts in the vicinity of Pleasant Lake, in the neighborhood of complainants' lands. It extends to and enters Pleasant Lake and is treated as continuing through it to a point practically opposite its entrance (see 2 Comp. Laws, § 4339) where it leaves Pleasant Lake and runs a devious course through other lands lying north and east of said lake to the St. Joseph river. Its effect is to lower Pleasant Lake.

Counsel say that the application was insufficient to confer jurisdiction upon the commissioner to establish a drain and that therefore no valid assessment could be made. The briefs contain an extended discussion of this and other questions relating to the regularity of the proceedings up to and including the final order of determination. We are able to say that the defendant Bishopp was acting drain commissioner; that he undertook to lay out this drain; that he took steps pointed out by the statute and made an order establishing the drain, that no person owning land traversed by the drain undertook to review the proceedings by certiorari; and that no such person complains or asks in this cause relief from the appropriation of the land for the drain.

An examination of the drain law shows that persons

liable to be assessed for benefits were not considered necessary parties to the proceedings up to this point and they are not in terms given any right to be heard in, or to appeal from, or review them. They are first brought in by a notice of the letting of the drain after its establishment and the designation of their lands as part of an assessment district. We considered this question in the case of *Roberts* v. *Smith*, 115 Mich. 5, where we held that such persons had no constitutional right to be heard upon the necessity for the drain. See, also, *Borgman* v. *City of Detroit*, 102 Mich. 261, where we not only held that a landowner might waive the questions of necessity and compensation, but that persons assessed for benefits were not prejudiced thereby. See, also, *Scotten* v. *City of Detroit*, 106 Mich. 564; *Crandall* v. *McElheny*, 146 Mich. 191.

We are of the opinion that none of the questions referred to are open to the complainants, unless it be the claim that the proceedings are absolutely null and void for want of a lawful application. Our understanding of the complainants' position is, that no authority exists to establish a drain except it be based upon a valid application, without which any effort to do so is futile and the proceeding null and void, and that it necessarily follows that an assessment for benefits having nothing to stand upon is also void. It is said that this application was defective for the reasons—

1. That it was not signed by the requisite number of freeholders.
2. That it did not definitely describe the drain.

The testimony shows that the application was signed by a sufficient number of persons, if they were freeholders. Some of them owned land by entireties, and it is said that such are not freeholders and cannot be counted unless both husband and wife signed the petition. We are cited to the case of *Auditor General* v. *Fisher*, 84 Mich. 128. In that case, under an act requiring a petition signed by

the owners of certain property, it was held that when husband and wife held land as joint vendees in a land contract the signature of the husband alone was insufficient, those of both being necessary to a signing by "the owner." In this case, however, the signature by a definite number of freeholders is required. Every tenant by entireties has an estate for life, and is therefore a freeholder under our statute, 3 Comp. Laws, § 8787, although he may have a common interest with another. In either case the quality of the estate of each person may be in the nature of a freehold sufficient to comply with the law requiring the signature of freeholders, but not sufficient to meet a requirement that the owner of certain land shall sign the application. One does not own it, though each has a qualified freehold interest. We think, therefore, that the application was not void for want of signatures. See, also, *People, ex rel. Godwin,* v. *Board of Education,* 38 Mich. 95.

Again, counsel seek to exclude certain names upon the claim that at the time they were signed their owners had no deed or land contract of record. The statute does not appear to require the record of a deed to constitute the grantee therein a freeholder. Again, if, as claimed, some of the admitted freeholders signed the application under a misapprehension of its effect, that fact,—not appearing on the face of the paper,—could not render it ineffective to confer jurisdiction, although the proceedings might perhaps be attacked for that reason in the way pointed out by statute, if such persons should not choose to waive the point. See *Patterson* v. *Mead,* 148 Mich. 659.

We are of the opinion that the application gave a "general description of the beginning, the route and the terminus" of the drain, which is all that the law requires in that particular. *Kinnie* v. *Bare,* 68 Mich. 625, 80 Mich. 345; *Brady* v. *Hayward,* 114 Mich. 330. It follows that the application conferred jurisdiction upon the commissioner to act and we need not therefore decide whether the complainants could maintain their suit under the circum-

stances of this case were the petition defective, and we intend no intimation of opinion upon that question.

Jurisdiction having been acquired, however, subsequent defects, so far as they affect the condemnation proceedings alone, do not concern these complainants, who are not parties to them, as already shown. See *Roberts* v. *Smith*, 115 Mich. 5. The drain must be considered to have been legally established, and complainants interested only in the apportionment of benefits.

The law provides that the final order establishing the drain shall designate the lands constituting the assessment district and contain an apportionment of benefits, and it provides for notice thereof, and of a day when this apportionment will be reviewed. 2 Comp. Laws, §§ 4324, 4340; *Cook* v. *Covert*, 71 Mich. 249. These complainants were entitled to this notice, and without it have the right to question their respective assessments by proper proceedings. Some of them apparently had notice; some of them appeared at the time set, which was a waiver of irregularities in service; and none of them appealed in the way pointed out by the statute to the tribunal provided, whose determination would have been final. See 2 Comp. Laws, §§ 4345, 4346. As to all such the apportionment must stand, unless a ground hereafter to be discussed shall afford them relief.

The learned circuit judge at the hearing stated that the question of notice applies only to certain of the complainants named on page 261a of the record. We shall therefore assume that all others had notice or appeared. Of these, Rose Reutschler, Carrie Steele, Sarah Scheick, Lizzie Scheick and John Scheick were heirs owning land in common, subject to the right of dower. The following were wives claiming to own with their respective husbands by entireties, viz., Mary Ford, Martha Smith, Jennie Brown, Mary Pfau, Celia Redman, Rebecca Rebell, Elizabeth Whitehead, Cora Clark, Delia Curtis. John Roy Smith is said to be a tenant in common with Fred Smith.

The law, 2 Comp. Laws, § 4340, provides for personal service of notice in conformity to the provisions of section 4324. This requires personal service upon the person to be notified by delivering to him a copy, or by leaving it at his residence, etc. Section 4340 also provides for posting notices. We held in *Smith* v. *Carlow*, 114 Mich. 71, that publication of the notice was in that case sufficient, but this was under a different statute not now in force, 3 How. Stat. § 1740 *d* 8 et seq.

If there had been no waiver such of these persons as were not served with notice in one of the methods mentioned in the statute, *i. e.*, by delivering personally, or by leaving a copy of the notice at the residence with a person of suitable age and discretion, and informing such person of the contents, were not properly notified. It is not sufficient notice to a wife, to leave a notice with her for her husband, or to one tenant in common, to leave a notice with his cotenant.

We do not overlook the claim that service upon the husband, where land in held by the entireties, is all that is required, to which proposition counsel for the defendant cite the case of *People, ex rel. Roediger,* v. *Drain Com'r,* 40 Mich. 745. We think that case not decisive of the point as the decision does not turn upon the question. Undoubtedly, at common law, the husband was entitled to the use, rents and profits of a wife's land during coverture, and perhaps it would follow that he had authority in the case of an estate in which they held by entireties upon the ground that he represented the estate. How far such an estate can be called the separate estate of the wife we need not consider. We think, however, that the suggestion made by counsel is inconsistent with the following cases: *Fisher* v. *Provin,* 25 Mich. 347; *Dowling* v. *Salliotte,* 83 Mich. 131; *In re Lewis,* 85 Mich. 340; *Dickey* v. *Converse,* 117 Mich. 449; *Clawson* v. *Insurance Co.,* 121 Mich. 591; *Fowles* v. *Hayden,* 130 Mich. 47. See, also, *Hiles* v. *Fisher,* 144 N. Y. 306 (30 L. R. A. 305).

It is also the claim of the complainants that in apportioning the percentage of benefits the commissioner proceeded upon an improper theory and method, whereby they were unduly assessed, and that this was a legal fraud which affected all alike and was a ground for an attack upon the assessment in chancery, under the rule laid down in *Hudlemyer* v. *Dickinson*, 143 Mich. 250. In that case the jurisdiction of chancery to vacate the assessment for fraud in the assessment was sustained, and a new assessment ordered upon the ground of fraud and collusion between the drain commissioner and board of review in making the assessment district and apportioning the benefits. The fraud was actual and clearly proved, and the decision can be sustained upon the ground that chancery has jurisdiction to set aside a judgment at law, where it has been obtained through fraud. We cannot say from the proofs in this cause that there was fraud in including complainants' land in the district, or in making the apportionment. It is true that these complainants all testify that they were assessed too much, and some testify that their lands are not benefited by the drain, but, as said in the *Hudlemyer Case,* we cannot substitute our judgment for that of the officers to whom the determination of such questions has been confided by the law. We may remark in this connection, however, that we think counsel overlook the fact that the value of land reclaimed is not the limit of assessment for benefits. There are other benefits beside the mere reclamation of land, especially the influence of the drain upon the health of the locality, and it does not follow from the fact that a parcel of land has no standing water upon it that a drain will not benefit it, or that the commissioner, if he assess it, does not assess it upon the basis of benefits as required by section 4350. Again, we think one near the head of a drain may perhaps be benefited more than one near the outlet.

We find then:

1st. That the bill cannot be maintained upon the ground of defects anterior to the final order of confirmation.

2d. That the judgment, i. e., the assessment cannot be set aside upon the ground of fraud.

3d. That some of the complainants were not lawfully served with notice of assessment.

As to these latter we should grant relief, unless, as is claimed by the defendant, their several claims are improperly joined, or they have not sought a proper remedy. It is contended on the part of the defendant that the bill is multifarious in that many distinct claims belonging to different persons are joined, and should be dismissed for this reason. On the other hand the complainants rely upon a line of cases which justify the joinder of several complainants when their claims are identical and depend upon the same facts.

Had complainants' first claim been sustained we are of the opinion that the joinder would have been proper. It is possible that the same would be true had the charge of fraud in the assessment been sustained, as it might have affected all alike except in degree. But it is obvious that where the question of validity of the assessment must turn on the service of notice it is personal to each, the failure of service upon one being of no avail to another. See *Douglass* v. *Boardman*, 113 Mich. 618.

The question of multifariousness is not raised by the pleadings. See *Snook* v. *Pearsall*, 95 Mich. 534; *Burnham* v. *Dillon*, 100 Mich. 352; *Childs* v. *Pellett*, 102 Mich. 564; *Miner* v. *Wilson*, 107 Mich. 57. For this reason we may properly decline to consider it.

The assessment will be set aside as to the lands of the following persons: Rose Reutschler, Carrie Steele, Sarah Scheick, Lizzie Scheick, John Scheick, John Roy Smith, Mary Ford and husband, Frank Ford, Martha Smith and husband, Irving Smith, Jennie Brown and husband, Irving E. Brown, Mary Pfau and husband, Barnhardt Pfau, Celia Redman and husband, Peter Redman, Rebecca Rebell and husband, Ephraim Rebell, Elizabeth Whitehead and husband, William Whitehead, Cora Clark and husband, James Clark, Della Curtis and hus-

band, Daniel W. Curtis. As to these persons the decree is reversed, with costs of both courts, and a decree entered in this court adjudging the assessment as to their land null and void, subject to proceedings de novo.

As to all other complainants the decree will be affirmed, with costs of both courts.

MONTGOMERY, OSTRANDER, CARPENTER, and MC-ALVAY, JJ., concurred.