## ALTERMATT *v.* DILLMAN.

HIGHWAYS AND STREETS—COVERT ROADS—ASSESSMENT.

Decree for plaintiffs in suit to invalidate proceedings to establish a superhighway under Covert road act, enjoin collection of assessments for benefits and recover assessments paid is reversed and bill dismissed (1 Comp. Laws 1929, § 4314 *et seq.*).

Appeal from Macomb; Reid (Neil E.), J. Submitted June 14, 1934. (Docket No. 5, Calendar No. 37,769.) Decided October 23, 1934.

Bill by Nicholas W. Altermatt and others against Grover C. Dillman, State highway commissioner, and others to set aside special assessments and for other relief. Decree for plaintiffs. Defendants appeal. Reversed.

*Bert V. Nunneley* and *John H. Nunneley* (*Douglas W. Ball* and *William H. Nunneley,* of counsel), for plaintiffs.

*Patrick H. O'Brien,* Attorney General, *Nicholas V. Olds,* Assistant Attorney General, *Arthur F. Lederle,* Special Assistant Attorney General, for defendant State highway commissioner.

*Roy W. McKinstry,* for defendant Macomb county.

*Miller, Canfield, Paddock & Stone, amici curiæ.*

POTTER, J. Plaintiffs, land owners, liable for special assessments for benefits for the so-called "Mound Road" superhighway in Macomb county, filed a bill of complaint claiming all of the actions and proceedings taken to survey, locate, establish and construct such highway and to build the same, to levy and spread assessments and apportion the same, are fraudulent, null and void, and should be set aside, canceled and held for naught; and, the county treasurer of Macomb county and his successor in office be perpetually enjoined from collecting or attempting to collect any of the assessments levied against the lands and property of plaintiffs; a temporary injunction be issued pending termination of the suit; the State highway commissioner be perpetually enjoined from collecting or attempting to collect any of the assessments against the premises of plaintiffs, or from making any further assessments against their lands and premises; the State highway commissioner be required and directed to reimburse plaintiffs for the assessments levied and assessed against their property which may have been paid by them and the assessment roll for the construction of the "Mound Road" superhighway mentioned and described in the bill of complaint be decreed to be null and void and the title to plaintiffs' lands and premises be declared to be free and clear from any clouds created thereon by reason of the assessment roll for

the construction of said "Mound Road" superhighway and for other and further relief. Defendants appeared and answered. The case was heard. A decree was entered for plaintiffs and defendants appeal. Various grounds are alleged as the basis for the appeal and such of them as we deem important will be hereinafter considered.

A petition dated September 2, 1925, addressed to the board of county road commissioners of Macomb county, to lay out and establish where necessary and to improve a highway mentioned and described in such petition with such materials as the board of county road commissioners should deem best, under the provisions of Act No. 59, Pub. Acts 1915, as amended (1 Comp. Laws 1929, § 4314 *et seq.*), was filed with the board of county road commissioners of Macomb county. The petition specifically described the road sought to be improved and built which was 12–¾ miles in length and wholly within Macomb county. No question is raised but that this petition was entirely sufficient to confer jurisdiction upon the ·board of county road commissioners of Macomb county. Their duty was to act upon the petition. The members of the Macomb county road commission considered the improvement of the road petitioned for an inter-county project, part of a superhighway plan, particularly beneficial to Wayne county, which ought to share a part of its cost of construction and improvement. Its members realized they had no authority to assess any part of the cost of the construction of the proposed highway against Wayne county or against lands and premises situated therein; and consequently transmitted the petition to the State highway commissioner.

The statute provides:

"Should a petition be presented to these county road commissioners for the improvement of any

highway, in any county, and *in the judgment of the county road commissioners, there should be lands liable to an assessment for benefits situate in any other county,* then the county road commissioners shall certify such petition to the State highway commissioner, who shall thereupon proceed to act, upon the same as though the said petition had been addressed to him in the first instance." 1 Comp. Laws 1929, § 4352.

The petition here involved was so certified by the Macomb county road commission March 31, 1926. Upon the question of the certification of the petition to the State highway commissioner the trial court said:

"While the letter transmitting the petitions to the State highway commissioner was informal, and while it is true that the board of county road commissioners of Macomb county never had a formal meeting and never by any formal resolution adopted the judgment nor determined that there were lands in Wayne county which should be included in the assessment, yet the commissioners themselves individually so considered and individually so expressed their views, and, in consequence, the letter of transmittal was signed by the engineer and the petitions forwarded. I conclude that while this is about as informal as the matter could be done and considered to be any action of the county road commissioners at all, still the proceeding is not void for want of certification to the State highway commissioner."

No appeal was taken by plaintiffs from this finding upon the part of the trial court and it will be treated as final, conclusive and binding. Did this petition so certified by the board of county road commissioners of Macomb county confer jurisdiction.upon the State highway commissioner to act?

A petition in due form having been presented to the board of county road commissioners of Macomb county, for the improvement of a road in that county, it was the judgment of such board there should be lands in Wayne county liable to an assessment for benefits. It was the duty of the board of county road commissioners of Macomb county under the circumstances to certify the petition to the State highway commissioner. The petition was so certified. What was the duty of the State highway commissioner? It was his duty to proceed to act upon such petition the same as though the same had been addressed to him in the first instance. Up to this point in the proceedings (a) the original petition was in proper form. (b) It was addressed to the board of county road commissioners of Macomb county. (c) In the judgment of the board of county road commissioners there should be land in Wayne county liable for an assessment for benefits. (d) It was the duty of the board of county road commissioners thereupon to certify the petition to the State highway commissioner. (e) The petition was so certified; (f) and thereupon the State highway commissioner acquired and had jurisdiction in the premises regardless of subsequent irregularities. *Hall* v. *Slaybaugh,* 69 Mich. 484; *Lanning* v. *Palmer,* 117 Mich. 529; *Hinkley* v. *Bishopp,* 152 Mich. 256; *Ranney Refrigerator Co.* v. *Smith,* 157 Mich. 302.

This court has said a petition to lay out a drain conferred no jurisdiction to lay out a Covert road. Certainly a petition to lay out a Covert road would confer no jurisdiction to build a town hall and it has held a petition for a drain did not confer jurisdiction upon the drain commissioner to lay out a sewer. A justice of the peace has no jurisdiction to try and sentence to imprisonment a man for the crime of

murder but a justice of the peace has jurisdiction to try questions of assault and battery and if one charged with assault and battery is tried by a justice of the peace and it appears upon the trial the assault and battery was committed outside the county in which the justice holds office, the conviction of defendant by the justice is not void for want of jurisdiction, no matter how erroneously the justice may have acted in the premises. There is a difference between a want of jurisdiction and a mistake in jurisdiction, or an error in the exercise of jurisdiction. This rule was clearly laid down by Mr. Justice Brewer, afterward of the Supreme Court of the United States, in *Cooke* v. *Bangs,* 31 Fed. 640; is the basis of the text of VanFleet's Collateral Attack (1st Ed.), pp. 74, 75, and was approved in *Bradley* v. *Fisher,* 13 Wall. (80 U. S.) 335, where it is said:

"A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdiction over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. But where jurisdiction over the subject-matter is invested by law in the judge, or in the court which he holds, the manner and extent in which the jurisdiction shall be exercised are generally as much questions for his determination as any other questions involved in the case, although upon the correctness of his determination in these particulars the validity of his judgments may depend. Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to try parties for public offenses, jurisdiction over the subject of offenses being entirely wanting in the court, and this

being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority. But if on the other hand a judge of a criminal court, invested with general criminal jurisdiction over offenses committed within a certain district, should hold a particular act to be a public offense, which is not by the law made an offense, and proceed to the arrest and trial of a party charged with such act, or should sentence a party convicted to a greater punishment than that authorized by the law upon its proper construction, no personal liability to civil action for such acts would attach to the judge, although those acts would be in excess of his jurisdiction, or of the jurisdiction of the court held by him, for these are particulars for his judicial consideration, whenever his general jurisdiction over the subject-matter is invoked.''

We hold, therefore, the State highway commissioner acquired jurisdiction by the certification of the petition to him by the board of county road commissioners of Macomb county, even though it should be found the State highway commissioner subsequently erroneously and irregularly exercised the jurisdiction so acquired.

The statute provides for a review of all erroneous and irregular actions upon the part of the State highway commissioner by certiorari.

''If any material defect be found in the proceedings, such proceedings shall be set aside in so far as erroneous with consent to the county road commissioners, or the State highway commissioner, to proceed anew with their proceedings from the point where the defect occurs. The entire proceedings shall not be set aside except where the county road commissioners, or the State highway commissioner, *are found to have no jurisdiction to act upon the petition presented.* If the proceedings be sustained, the party bringing the certiorari shall be liable for

the costs thereof; and if they be not sustained in whole, or in part, the parties petitioning for the proposed improvement, shall be liable for the costs. If no certiorari be brought within the time herein described, the improvements shall be deemed to have been legally ordered and established, and its legality shall not thereafter be questioned in any suit at law, or in equity.'' 1 Comp. Laws 1929, § 4381.

The so-called Covert road act is in many respects analogous to the drain statute. If, on certiorari, irregular or erroneous action is shown, the proceedings may be set aside, so far as such errors or irregularities affect the same, and the commissioner directed to proceed from that point in a regular manner, but such proceedings may not be wholly set aside except for entire want of jurisdiction. If the remedy by certiorari in drain proceedings is not taken advantage of within the time prescribed by statute, such proceedings may not thereafter be questioned in a court of equity, 1 Comp. Laws 1929, § 4902, which statute has been upheld and enforced in *Township of Swan Creek* v. *Brown,* 130 Mich. 382; *Horn* v. *Board of Sup'rs of Livingston County,* 135 Mich. 553; *Crandall* v. *McElheny,* 146 Mich. 191; *Jones* v. *Gable,* 150 Mich. 30; *Grandchamp* v. *McCormick,* 150 Mich. 232; *Township of Clarence* v. *Dickinson,* 151 Mich. 270. In the latter case the court, by Justice Carpenter, in construing the drain statute, held that no questions except of a constitutional character could be raised other than by certiorari. In *Township of Lake* v. *Millar,* 257 Mich. 135, this test was applied to drain proceedings before the court, which commented upon *Township of Clarence* v. *Dickinson, supra*; *Arnham* v. *Round,* 210 Mich. 531; *Heliker* v. *Oakland County,* 216 Mich. 595; and *Stellwagen* v. *Dingman,* 229 Mich. 159, and it was said:

"The question is presented whether a petition for a drain confers jurisdiction upon the drain commissioner to build a sewer; whether a petition to the drain commissioner to do something within the scope of his authority confers jurisdiction upon him to do something wholly without the scope of his authority; whether a petition to do something he has a right to do confers jurisdiction upon him to do something which he has no right to do; whether upon filing a petition for a drain which he has a right to build, the commissioner may lay out and construct a sewer which he has no right to build? A drain commissioner may not, by mere assumption of authority, legally do that which he has no authority to do. If, upon a petition to do what he has a right to do, he may do what he has no right to do, the extent of his authority is measured by his own acts and conduct and not by law. The extent of the authority of the people's public agents is measured by the statute from which they derive their authority, not by their own acts and assumption of authority. The rule is that errors and irregularities in drain proceedings must be taken advantage of by certiorari, but an entire want of jurisdiction may be taken advantage of at any time. The drain commissioner had no jurisdiction to construct a sewer any more than to construct a Covert road. No one will contend that if the drain commissioner, when the petition for a drain was filed with him, had laid out an assessment district, established and constructed a Covert road, the plaintiffs would have been without remedy. The same legal question is here presented. The proceedings are void for want of jurisdiction."

The distinction between cases such as *Township of Lake* v. *Millar, supra,* and cases like *Township of Clarence* v. *Dickinson, supra,* is pointed out in *Fuller* v. *Cockerill,* 257 Mich. 35, where it was claimed:

"The court of equity is without jurisdiction, and that the sole remedy of plaintiffs, if any, is on the

law side of the court by certiorari. Touching this question, appellants quote *Township of Clarence* v. *Dickinson,* 151 Mich. 270, wherein it is held:

" 'The lack of jurisdiction which will warrant relief in equity must arise from a violation of the Constitution.' Appellants assert that there is nothing in this proceeding which violates a constitutional right of plaintiffs. In this we cannot agree. If, as we hold, defendants were wholly without authority to lay this drain, the ultimate result of assessment of benefits and the collection from plaintiffs of the drain tax would be to deprive them of their property without due process of any sort."

*Fuller* v. *Cockerill, supra,* was written by Mr. Justice North whose opinion in the circuit court in *Township of Clarence* v. *Dickinson, supra,* was affirmed by this court in 151 Mich. 270. These cases do not conflict. *Township of Lake* v. *Millar, supra,* does not militate against the rule of *Fuller* v. *Cockerill, supra,* or *Township of Clarence* v. *Dickinson, supra.* What these cases hold is that a drain proceeding fully carried out and consummated by an assessment of taxes, without jurisdiction, may result in a taking of property without due process of law in violation of the constitutional prohibition, thereby giving a court of equity jurisdiction, and that a drain commissioner may not, based upon a petition for a drain which he has a right to lay out, legally establish and construct, a Covert road or a sewer which he has no authority to lay out, establish and construct.

The State highway commissioner, though he may have acted erroneously or irregularly, was not for that reason without jurisdiction in the premises.

Most of plaintiffs signed the petition for the road, they must be held to have known "where a petition is presented for improving any highway the county

road commissioners or the State highway commissioner may adopt such kind of improvement as they shall deem best under the circumstances." 1 Comp. Laws 1929, § 4320. They knew of the survey made by the State highway commissioner, the estimate of the cost of the construction of the road made by a competent engineer, of the plat of the highway and of the proposed assessment district, they had notice of hearing, an opportunity to be heard and to raise objections before the first order of determination was made by the State highway commissioner, and of the final order of determination. They knew of the acquisition of the right of way. Some of them conveyed land therefor and received pay for the same; they knew of the number of instalments in which the money to pay for the road was to be raised; the establishment of the special assessment district, and the apportionment of the cost of the road. They had an opportunity to appeal from the apportionment of benefits, and notice of the time and place of the hearing of objections on account of the special assessments; notice of review of the special assessment roll; an opportunity to file objections and be heard thereon, and of all other proceedings prior to the construction of the road in question.

As said in *Hall* v. *Slaybaugh, supra:*

"After waiting until the assessments were all made for paying for the completed work, and all had paid the same except himself, and after he had received all the benefits to be derived from the construction of the work, he for the first time then comes forward, and objects to the whole proceeding as void, and asks this court to relieve him from the payment of the tax, on the ground that it is just and equitable for him so to do, and that he has no remedy at law.

"We think that, under all these circumstances, the complainant should be held to have waived all the irregularities of which he complains, and that he should pay the assessment made against him. *Harwood* v. *Huntoon, Drain Commissioner,* 51 Mich. 639; *Freeman* v. *Weeks,* 45 Mich. 335; *Motz* v. *City of Detroit,* 18 Mich. 495, 528; *Mabee* v. *Miner, Drain Commissioner,* 45 Mich. 568; *Louden* v. *East Saginaw,* 41 Mich. 18, 22; Cooley, Taxation (1st Ed.), § 573; *Jackson* v. *Detroit,* 10 Mich. 248; *Colton* v. *Rupert,* 60 Mich. 318; *Farrell* v. *Taylor,* 12 Mich. 113; *In re Lantis,* 9 Mich. 324 (80 Am. Dec. 85); *People, ex rel. Roediger,* v. *Drain Commissioner,* 40 Mich. 745.''

In *Attwood Brass Works* v. *City of Grand Rapids,* 230 Mich. 271, it is said:

"This court has repeatedly refused to aid in equity one who stands by and makes no objection to an improvement until after it has been made.

"Cooley in his work on Taxation (vol. 4, 4th Ed.), § 1613, says of this rule:

" 'It sometimes happens that a party who complains of illegal taxation has been so connected with the proceedings in voting, laying, or collecting the same, that it would be unjust and inequitable to others or to the public that any remedy should be given him in respect to the illegality. Such a case would exist if one in respect of some interest of his own should petition for or otherwise actively encourage the levy of the tax or assessment of which subsequently he makes complaint. * * * To quote from a decision recently made by the supreme court of Indiana:

" ' " "It is a general rule, now fully accepted in this State, that where the owner of property subject to assessment for public improvements stands by and makes no objection to such improvements, which benefit his property, he may not deny the authority by which the improvements are made, nor defeat the assessment made against his property for the benefits derived. And this is true both where the proceedings for the improvement are attacked for irregularity, and where their validity is denied, but color of law exists for the proceedings.'' *Board of Com'rs of Cass County* v. *Plotner,* 149 Ind. 116 (48 N. E. 635).'

"This principle was invoked in the early history of this court, where it said:

" 'We do not think that a court of equity can properly interfere to relieve a party, on the ground that assessments are irregular and unauthorized by the strict provisions of law, where they are substantially authorized by and made in reliance upon his own express agreement.' *Jackson* v. *City of Detroit*, 10 Mich. 248.

"And the court has been affirming and reaffirming this doctrine ever since the early case, as the following authorities will show: *Motz* v. *City of Detroit*, 18 Mich. 495; *Byram* v. *City of Detroit*, 50 Mich. 56; *Brown* v. *City of Grand Rapids*, 83 Mich. 101; *Lundbom* v. *City of Manistee*, 93 Mich. 170; *Atwell* v. *Barnes*, 109 Mich. 10; *Fitzhugh* v. *City of Bay City*, 109 Mich. 581; *Moore* v. *McIntyre*, 110 Mich. 237; *Goodwillie* v. *City of Detroit*, 103 Mich. 283; *Farr* v. *City of Detroit*, 136 Mich. 200; *Shaw* v. *City of Ypsilanti*, 146 Mich. 712; *Gates* v. *City of Grand Rapids*, 134 Mich. 96; *W. F. Stewart Co.* v. *City of Flint*, 147 Mich. 697, 700; *McKee* v. *City of Grand Rapids*, 203 Mich. 527.

"Under these holdings, if plaintiff, with knowledge, had simply sat by and made no objection until after the improvement was completed, it would be barred from making the objections which appear in the bill of complaint."

In *Reliance Automobile & Supply Co.* v. *City of Jackson*, 244 Mich. 232, it is said:

"Plaintiffs knew of the proposed improvement, had notice served on them, saw the work progress, some of them urged its completion; the city sold its bonds, the improvement was completed, the contractor paid, and a special assessment levied and in part paid, and then plaintiffs, after the completion of the improvement and the opening of the street to traffic, ask to be relieved of the cost of the improvement to their property. They can, under the circumstances, have no relief in a court of equity. *Byram* v. *City of Detroit*, 50 Mich. 56; *Lundbom* v. *City of Man-*

*istee,* 93 Mich. 170; *Fitzhugh* v. *City of Bay City,* 109 Mich. 581; *Farr* v. *City of Detroit,* 136 Mich. 200; *W. F. Stewart Co.* v. *City of Flint,* 147 Mich. 697; *Jones* v. *Gable,* 150 Mich. 30; *Auditor General* v. *Bishop,* 161 Mich. 117; *Attwood Brass Works* v. *City of Grand Rapids,* 230 Mich. 271; *Lowrie & Robinson Lumber Co.* v. *City of Detroit,* 237 Mich. 138.''

It is claimed this case is affected by Act No. 381, Pub. Acts 1925; 1 Comp. Laws 1929, §§ 4468–4480, inclusive. The road in question complied with the plans adopted by the superhighway commission of Wayne and Macomb counties. This superhighway commission is advisory only. It is provided in the act creating it:

''Nothing herein shall be construed to take from the State highway department any jurisdiction that it may have over any State trunk line highway now or hereafter established.'' 1 Comp. Laws 1929, § 4479.

The so-called Covert road act includes ''*Any highway,* not included within the corporate limits of any city or village in this State,'' etc. 1 Comp. Laws 1929, § 4315. The county road commissioners and the State highway commissioner ''shall have *all* the power for laying out, establishing, widening and straightening of highways that may be now or hereafter granted to them by any law of the State or by any act of congress of the United States.'' 1 Comp. Laws 1929, § 4316.

''Improving a highway shall include widening, grading, drainage, bridging, stoning, macadamizing, paving and making of cement, asphalt, bituminous products, or slag, gravel, or any material suitable for road purposes, or any combination of the same. Where a petition is presented for improving any highway the county road commissioners or the State

highway commissioner may adopt such kind of improvement as they shall deem best under the circumstances." 1 Comp. Laws 1929, § 4320.

Public highways shall not be less than four rods in width, except in the particular instances mentioned by statute, 1 Comp. Laws 1929, § 3917; and may of course be as much wider as in the opinion of the highway authorities is necessary and proper to handle present and prospective traffic. A superhighway is only a highway, notwithstanding its exuberant characterization. There is no conflict between the superhighway act and the Covert road act that affects the proceedings here under consideration.

We think the State highway commissioner acquired, and exercised jurisdiction; the assessments were made upon what was regularly determined by the proper authority to be the basis of benefits; there was no such fraud or abuse of discretion as is necessary to invalidate the assessments made; all the irregularities and technical errors if any, in the proceedings, not having been raised by certiorari or otherwise in the course of the proceedings have been waived and cannot now be raised in a court of equity.

Decree reversed, with costs, and bill dismissed.

NELSON SHARPE, C. J., and BUSHNELL and EDWARD M. SHARPE, JJ., concurred with POTTER, J. NORTH, FEAD, WIEST, and BUTZEL, JJ., concurred in the result.