# STATE OF MICHIGAN

# COURT OF APPEALS

CHARTER TOWNSHIP OF LANSING,

       Plaintiff-Appellant,

v

INGHAM COUNTY DRAIN COMMISSIONER,

       Defendant-Appellee,

and

GROESBECK PARK DRAIN BOARD OF
REVIEW,

       Defendant.

UNPUBLISHED
December 2, 2014

No.  316870
Ingham Circuit Court
LC No.  13-000388-CE

CHARTER TOWNSHIP OF LANSING,

       Plaintiff/Petitioner-Appellant,

v

INGHAM COUNTY DRAIN COMMISSIONER,

       Defendant/Respondent-Appellee,

and

DRAINAGE DISTRICT,

       Intervenor,

and

GRANGER WASTE MANAGEMENT
COMPANY,

       Intervenor-Appellee,

No.  318446
Ingham Circuit Court
LC No.  13-000732-AS

-1-

and

GROESBECK PARK DRAIN BOARD OF
REVIEW,

        Intervenor,

and

LANSING BOARD OF WATER AND LIGHT,

        Intervenor/Respondent-Appellee.

---

Before:  RONAYNE KRAUSE, P.J., and WILDER and STEPHENS, JJ.

PER CURIAM.

In this consolidated appeal, the Charter Township of Lansing, plaintiff and/or petitioner in the two consolidated cases, appeals by right two separate orders denying it relief regarding a very expensive drain project for which the Township was assessed a substantial portion of responsibility.  Generally, the Township contends that it should not be apportioned such a great portion of the project.  In LC No. 13-000388-CE/Docket No. 316870, the trial court dismissed for a want of subject-matter jurisdiction the Township's claim that the apportionment constituted a deprivation of property without due process.  In LC No. 13-000732-AS/Docket No. 318446, the trial court denied the Township's petition for certiorari review of the Drainage Board of Review's final determination upholding the apportionment.  Because the Township has not articulated a legal basis for relief, we must nevertheless affirm.

The Township is essentially the irregularly-shaped, piecemeal, and noncontiguous remains of the northwest corner township of Ingham County left after the City of Lansing began annexing land after its incorporation in 1859.  According to the 2012 United States Census, the Township consisted at that time of only 4.93 square miles of land and had a population of 8,126. A portion of the Township lies north of Bancroft Park/Groesbeck Golf Course in the City of Lansing and encompasses a length of Lake Lansing Road, including the Eastwood Towne Center strip-mall next to US-127.  The Lansing Board of Water and Light (LBWL) owns property, which it used as a fly ash landfill from 1979 to 1997, within the portion of the Township that lies within the Groesbeck Park Drain district.  Granger Waste Management Company (Granger) runs a refuse and recycling operation that is partly located within the portion of the Township that lies within the Groesbeck Park Drain District.  The Drain District covers approximately 295 acres, of which 222.77 acres are within the geographical boundaries of Lansing Township, representing approximately 6.6% of the Township's total land area.

The drain at issue, the Groesbeck Park Drain (the Drain), was established by the Ingham County Drain Commissioner in 1985.  In 1990, the Township petitioned the Ingham County Drain Commissioner to improve the Drain.  In 1999, the Ingham County Road Commission (the

Road Commission) petitioned the Ingham County Drain Commissioner to further improve the Drain. Ultimately, the Drain Commissioner held a "day of review" on March 18, 2013, regarding the Drain project. The Drain's estimated cost would be $12.595 million, of which the Township would be apportioned 62%. However, a few days later, the Township's apportionment was reduced to 49.5%. The Township believes that the approximately $6.234 million for which it would be liable under the Drain assessment is excessive and improper. The Township filed objections on March 28, 2013, and a Board of Review was convened and held over the course of four days in April of 2013.

During the pendency of the Board of Review, the Township filed its initial complaint in LC No 13-000388-CE, which in part sought preliminary injunctive relief. The trial court initially issued an ex parte temporary restraining order against the Drainage Board and the Drain Commissioner, precluding them from taking any further action on the Drain project, which interrupted the Board of Review proceedings for a few days until the restraining order was dissolved. The Township filed an amended complaint in LC No 13-000388-CE, asserting violations of its constitutional rights, including, *inter alia*, that the drain petition filed by the Road Commission had been *ultra vires*, so the Drain Commission lacked jurisdiction and the assessment constituted a deprivation of property without due process. On May 3, 2013, the Township voluntarily dismissed all of its claims in LC No 13-000388-CE except for the noted claim of deprivation of due process based on the allegedly *ultra vires* drain petition.

Meanwhile, on April 24, 2013, the Board of Review, among other minor alterations, reduced the Township's apportionment to 23.5% and increased LBWL's apportionment from 30.00% to 56.0846%. LBWL petitioned the Ingham County Circuit Court for a writ of certiorari to appeal the Board of Review's decision, asserting that it had not received notice of the Board of Review and therefore did not have an opportunity to participate, and the Board of Review had increased LBWL's apportionment on the basis of improper considerations. The trial court agreed and ordered the matter remanded to the Board of Review "because the Board of Review's decision was not based on substantial, material and competent evidence on the entire record." The trial court particularly emphasized that the Board of Review had impermissibly considered LBWL's "responsibility" for having created a fly ash pit and LBWL's relative ability to absorb the cost of the Drain, which the trial court noted were "considerations neither relevant nor consequential to the issue of 'benefits derived' from the drain project, as required by the Michigan Drain Code . . . "

On June 4, 2013, the trial court issued an opinion and order in LC No 13-000388-CE, nominally prompted by a motion for reconsideration by the Township regarding the dissolution of the temporary restraining order. The trial court determined that the Township had failed to bring the proper kind of review permitted by the Drain Code after the Drain board's final order of determination, and therefore the trial court lacked jurisdiction to hear the Township's deprivation of due process claim. The trial court recognized that it might have equitable jurisdiction in the event of fraud or a constitutional challenge, and that a deprivation of property without due process was such a challenge. However, the trial court concluded that although the Road Commission's petition did not itself specifically reference highways, the resolution that it incorporated by reference did state a need to provide for drainage involving Lake Lansing Road, so there was no complete lack of authority. The trial court therefore dismissed the Township's amended complaint and closed the case. The appeal in Docket No. 316870 followed.

Thereafter, the Board of Review reconvened for four more days. At the conclusion of the reconvened hearings, the Board of Review reinstated the 49.5% apportionment to the Township and 30.0846% to the LBWL. Thereafter, the Township filed its petition for certiorari in LC No 13-000732-AS. The trial court issued a written opinion and order on August 15, 2013, denying the writ. The trial court noted that it could not substitute its judgment for that of the Board of Review, and the Board of Review's decision appeared to be authorized by law and supported by sufficient evidence. It declined to consider the Township's constitutional arguments because "those claims were previously addressed in Case No. 13-000388-CE and are now pending before the Court of Appeals." The appeal in Docket No. 318446 followed.

Our Supreme Court has recently set forth the relevant standard of review in drain proceeding appeal cases as follows:

> We review de novo a trial court's decision to grant or deny summary disposition. *Debano-Griffin v Lake Co*, 493 Mich 167, 175, 828 NW2d 634 (2013). Whether due process has been afforded is a constitutional issue that is reviewed de novo. *People v Wilder*, 485 Mich 35, 40, 780 NW2d 265 (2010). Likewise, whether a court has subject-matter jurisdiction is a question of law reviewed de novo. *Lapeer Co Clerk v. Lapeer Circuit Judges*, 465 Mich 559, 566, 640 NW2d 567 (2002). Questions of statutory interpretation are also reviewed de novo. *Detroit v Ambassador Bridge Co*, 481 Mich 29, 35, 748 NW2d 221 (2008). Though our review of the issues presented is thus de novo, we are also mindful of our previous declaration that, in general, "[w]e ... are not inclined to reverse [drain] proceedings ... absent [a] showing of very substantial faults." *In re Fitch Drain No 129*, 346 Mich 639, 647, 78 NW2d 600 (1956). [*Elba Twp v Gratiot Co Drain Comm'r*, 493 Mich 265, 277-278; 831 NW2d 204 (2013).]

Additionally, the board of a county road commission is an administrative board established by law. See MCL 224.9. Consequently, it necessarily exercises some quasi-legislative and quasi-executive powers. See *People ex rel Attorney General v Common Council of Detroit*, 29 Mich 108, 113 (1874); *In re Macomb Drain Comm'r*, 369 Mich 641, 647; 120 NW2d 789 (1963). *Civil Service Comm v Dep't of Labor*, 424 Mich 571, 631; 384 NW2d 728 (1986). Giving the maximum benefit of the doubt to the Township, and thereby presuming the road commission's petition to be in the nature of a legislative act, this Court's review would be de novo as on the rough equivalent of either a statute or a contract.

Drain apportionments made by a drain commissioner may be disturbed by a Board of Review upon a finding of "manifest error or inequality." MCL 280.157. Drain Code proceedings are administrative in nature and are therefore

> reviewed by the circuit court to determine whether the decision was authorized by law and supported by competent, material, and substantial evidence on the whole record. Const. 1963, art. 6, § 28; *Ansell v. Dep't of Commerce (On Remand)*, 222 Mich App 347, 354; 564 NW2d 519 (1997). Substantial evidence is any evidence that reasonable minds would accept as adequate to support the decision; it is more than a mere scintilla of evidence but may be less than a preponderance of the

-4-

evidence. See *Korzowski v Pollack Industries*, 213 Mich App 223, 228; 539 NW2d 741 (1995). This Court's review of the circuit court's decision is limited to determining whether the circuit court "applied correct legal principles and whether it misapprehended or grossly misapplied the substantial evidence test to the agency's factual findings." *Boyd v Civil Service Comm*, 220 Mich App 226, 234; 559 NW2d 342 (1996). In other words, this Court reviews the circuit court's decision for clear error. *Id*. A decision is clearly erroneous when, "on review of the whole record, this Court is left with the definite and firm conviction that a mistake has been made." *Id*. at 235. [*Michigan Ed Ass'n Political Action Committee v Secretary of State*, 241 Mich App 432, 444; 616 NW2d 234 (2000).]

In the absence of a readily apparent mistake or abuse of discretion, courts should not attempt to second-guess the administrative board members or municipal officers in whom discretion has been vested and whose expertise inevitably exceeds that of the court. *In re Macomb Drain Comm'r*, 369 Mich at 649. There will inherently be a certain amount of arbitrariness in "many honest and sensible judgments" that "express an intuition of experience which outruns analysis and sums up many unnamed and tangled impressions; impressions which may lie beneath consciousness without losing their worth," but in the absence of fraud or a clear adoption of wrong principles, "[s]omewhere there must be an end," so boards are deferred to within their jurisdiction. *Id*. at 650, quoting *Chicago*, *B & Q R Co v Babcock*, 204 US 585, 598; 27 S Ct 326; 51 L Ed 636 (1907).

The Township argues first that it had established a constitutional claim based on the drain petition's allegedly ultra vires status, so the trial court had subject matter jurisdiction in LC No. 13-000388-CE. We disagree.

Any person aggrieved by the establishment and apportionment of a drain may seek review by either certiorari and, with certain specific and limited exceptions, *only* by certiorari. *Elba Twp*, 493 Mich at 271-272, 280,[1] citing MCL 280.161. However, the harshness of such finality is tempered by two traditional exceptions: where the proceedings are alleged to have been contaminated by either fraud or constitutional infirmity. *Id*. at 280-281 and 281 n 11. No fraud has been alleged in the instant proceedings. Rather, the Township asserts that the drain petition was an "ultra vires" act by the Road Commission, and therefore it was constitutionally impermissible for the Drain Commissioner to act on it. The Township concludes that, as a consequence, the proceedings were tainted by constitutional infirmity and reviewable notwithstanding the Township's failure to seek certiorari.

Our Supreme Court has made clear that the kind of "constitutional infirmity" that will give rise to a right to review notwithstanding a failure to seek certiorari will not be found if the relevant Commissioner merely fails to comply with all of the statutory requirements dictated by the Drain Code. *Elba Twp*, 493 Mich at 284-285. Significantly, our Supreme Court analogized to the difference between "'a want of jurisdiction and a mistake in jurisdiction, or an error in the

---

[1] Superintending control is the functional equivalent, and our Supreme Court treats them as one and the same. See *Elba Twp*, 493 Mich at 272 n 4.

exercise of jurisdiction.'" *Id*. at 285, quoting *Altermatt v Dillman*, 269 Mich 177, 182; 256 NW 846 (1934). In *Elba Twp*, our Supreme Court held that a failure to meet a statutorily required minimum number of signatures was a mere statutory failure; in contrast, failure to provide notice *could* implicate the Constitution if the notice pertained to "deprivation of life, liberty, or property." *Id*. at 284-288.

In *Blades v Genesee Co Drain Dist No 2*, 375 Mich 683, 692-695; 135 NW2d 420 (1965), our Supreme Court held that equity could provide an opportunity for a landowner to contend that their property derives *no* benefit from a proposed drain project. In *Altermatt*, our Supreme Court observed that equity would be available to challenge a drain commissioner's attempt to construct a sewer, because drain commissioners simply do not have jurisdiction to construct sewers. *Altermatt*, 269 Mich at 184-186. In contrast, a party could not make use of equity to contest proceedings that were irregular or even allegedly invalid, but where they were within the commissioner's jurisdiction. *Id*. at 187-191. In discussing a drain commissioner's attempt to construct a sewer, which was outside the drain commissioner's jurisdiction, our Supreme Court explained that "[t]he extent of the authority of the people's public agents is measured by the statute from which they derive their authority, not by their own acts and assumption of authority. The rule is that errors and irregularities in drain proceedings must be taken advantage of by certiorari, but an entire want of jurisdiction may be taken advantage of at any time." *Lake Twp*, *Macomb Co v Millar*, 257 Mich 135, 142; 241 NW2d 237 (1932). Similarly, a drain commissioner lacks any authority to take land without condemnation proceedings, so equity may be used to restrain such a taking. *Patrick v Colby*, 342 Mich 257, 264; 69 NW2d 727 (1955).

In all of the above cases, a distinction is drawn between a drain commissioner acting *properly* and a drain commissioner acting *outside what a drain commissioner may do*. Whether or not the petition here was proper, the Drain Commissioner is endeavoring to perform actions that drain commissioners are entirely within their jurisdiction to perform. The Township has not alleged that they were denied adequate notice, and its assertion that its due process rights are being violated is based on the alleged impropriety of the petition. The Township further concedes that it will derive some benefit from the Drain; it disputes only how much of a benefit that will be. In short, the Township's assertion amounts only to an allegation of impropriety, not an allegation that the Drain Commissioner is acting outside his jurisdiction. Whether the Road Commission acted properly in submitting the petition is irrelevant.

In any event, we do not find the Road Commission's petition to be "ultra vires." The Township argues that, pursuant to MCL 280.327, road commissioners may petition to drain commissioners for drain projects only if "it becomes necessary for the construction or maintenance of any highway to take the surplus water across adjacent lands." The Township also asserts that road commissions lack the authority to "pursue a drainage project for any other purpose" pursuant to MCL 280.326, but in fact that statute only prohibits road commissions from actually laying out and constructing drains for any other purpose. Even if the Township's interpretation of the relevant provisions of the Drain Code is correct, the Township fails to articulate any legal requirement for road commissions to explicitly say in so many words in their petitions that any such petition is for the purpose of taking surplus water across adjacent lands. The requirement is only that such a need must exist as a prerequisite to making such a petition.

-6-

The Township only protests that the Road Commission failed to include what amounts to talismanic language in its petition, not that the actual prerequisite did not exist.

We conclude that the trial court properly found no valid constitutional claim asserted in LC No. 13-000388-CE, and it properly concluded that it therefore lacked subject matter jurisdiction.

The Township also argues that its apportioned share of the cost of the Drain is excessive. It must be emphasized at the outset that a considerable portion of the Township's arguments pertain to the absolute dollar amount of the drain assessment and the interplay between that very substantial sum and the unusual physical makeup of the Township, being both geographically small and noncontiguous. The Township points out, reasonably and accurately, that the assessment will have a profound financial effect on the entire Township and that the Drain will physically affect only a small portion thereof. However, none of the above considerations are relevant to the legal issues involved in this matter.

The cost of the Drain is irrelevant, at least insofar as no challenge to that total cost presently exists before this Court. Apportionment of that cost is based on "the principle of benefits derived" and is therefore apportioned "on a percentage basis." *Elba Twp*, 493 Mich at 271, citing and quoting MCL 280.151 and MCL 280.152. There is no statutory or other authority dictating that apportionments may be based on whether the benefit derived has a dollar value that matches the apportioned portion of the cost of a given drain. It is therefore irrelevant whether the Drain is actually "worth" approximately $6.234 million, the estimated cost of the Township's assessment, to the Township. Furthermore, the discontiguous nature of the Township is equally irrelevant and at most an unusual "red herring" in this case. We are aware of no requirement that a drain must physically affect water on the entirety of a township's total land area for that drain to benefit the township itself, irrespective of whether any such township is geographically contiguous. The question is only whether the township benefits, not whether all portions of the entire township benefit.

Consequently, the issue before this Court is quite simple: did the trial court clearly err in finding authorized by law and supported by competent, material, and substantial evidence on the whole record the Board of Review's decision that 49.5% of the benefits of the Drain would be accrued by the Township. The Township concedes that it derives some benefit from the drain, but it asserts that the Township itself owns very little property within the drainage district, the development that has increased the flow of storm water downstream is private, and the drain will do little to alleviate flooding in the Township at large. The Township also argues that it was apportioned 14% after the first drain petition. Even though both petitions pertain to the same Drain, the nature of the work they sought to perform differs, so we do not find the two petitions meaningfully comparable. There does not appear to be any reasonable dispute that the instant drain project is not merely a more-expensive version of the prior project, even if the affected geographic area is the same, so the benefits the Township may or may not have derived from the prior project are not necessarily relevant.

The Township's argument that upstream property owners are entitled to discharge their natural storm water runoff, although no additional waters beyond that, onto downstream property is accurate insofar as it goes. See *Emerald Valley Land Development Co v Diefenthaler*, 35

Mich App 346, 347-348; 192 NW2d 673 (1971). The Township argues that all of the property that has been improved in such a way as to cast off unhistoric amounts of water is privately owned and therefore ought to be individually liable for Drain apportionments in lieu of the Township itself. If the instant matter was a civil tort action brought by servient estate owners seeking private damages or injunctive relief against the Township on the basis of flooding on their individual private lands, the Township's argument would certainly be a highly relevant one. However, unnaturally increasing the historic flow of water onto a lower parcel of property gives right to a cause of action sounding in trespass. See *Wiggins v City of Burton*, 291 Mich App 532, 554-557, 563-567; 805 NW2d 517 (2011). No such private lawsuit is apparently contemplated here.

The purpose of the drain is not to relieve any landowner of the threat of such a suit. Rather, "our drain laws have historically served the public purposes of promoting the productive use of the state's land resources and combating the spread of water- and mosquito-borne diseases, such as cholera and malaria." *Elba Twp*, 493 Mich at 269. Notably absent from any formally established purpose of public drains is the protection of entities from the civil legal consequences of any alterations they may have made to their properties affecting the natural flow of water. Drain apportionments are based on benefits received, not on responsibility for having created a particular situation.

The Township's argument that the Drain will not alleviate any flooding within the Township "at large" involves some measure of poetic license with the record evidence. The Drain Commissioner tacitly conceded that the Drain would not directly and personally affect water on each and every parcel of property anywhere within the Township. The Township consequently pointed out that "the 94 percent of Lansing Township residents that are not in the Drainage District do not [derive benefit from this drain]." As we have discussed, we find no support in the law or any reasonable extrapolation therefrom for the proposition that the Drain must physically affect the entirety of the Township's land area to "benefit" the Township. The Township erroneously conflates a municipality as a discrete entity unto itself with what appears to be some manner of summary of its component parts. The Drain Commissioner drew a reasonable analogy to Yellowstone National Park. To paraphrase, it is not necessary for each and every citizen of the United States to have a view of the Yellowstone River waterfalls from their back yards for the nation *as a whole* to benefit from expending tax money maintaining the park as a national resource.

The gravamen of the assessment appears based on the Drain Commissioner's testimony on the first day of the Board of Review hearing that flooding "occurs everywhere within the district, with maybe the exception of the, maybe, upper part of the watershed; but it's pretty universally problematic throughout the whole district because of a lack of a unified catchment area and collection system, okay, which is necessary for this drain project." The example flood provided had occurred after a "quite frequent[]" rainfall of 2.8 inches. As noted above, 222.77 of the 295 acres of the Drainage District lie within the Township, so approximately 75.5% of the Drainage District is within the Township. There is nothing *obviously* irrationally or nonsensically harsh about apportioning 49.5% of the benefits of the Drain to 75.5% of the Drainage District's geographic area. For the most part, the Township would have this Court second-guess the Board of Review, which is not appropriate for this Court.

The Township has simply not shown that the trial court clearly erred in finding that the Board of Review's decision was either arbitrary or not based on competent, substantial, and material evidence on the whole record. The fact that there is no precise formula specifying the apportionment is not fatal; a certain amount of subjective "judgment call" is inherent in the operation of a drain commissioner and a board of review. See *In re Macomb Drain Comm'r*, 369 Mich at 650. The Township provides no evidence tending to show that it would not be benefitted by the Drain; indeed, it concedes the opposite. Rather, the Township's arguments largely amount to an assertion that the apportionment is disproportionate either because the absolute dollar value is extremely high or because the drain will not directly benefit each individual parcel of property within the Township, neither of which is a valid reason for overturning an apportionment. Courts generally will not reverse drain proceedings "except for very substantial faults." *Dunning v Drain Comm'r*, 44 Mich 518, 519; 7 NW 239 (1880). The Township has not articulated a legally cognizable substantial fault in the apportionment at issue here, so we cannot disturb it, even if the financial burden will be, as seems likely, quite significant.

The Township finally argues that the reconvened Board of Review disobeyed the trial court's remand order. Specifically, the Township asserts that the remand order precluded the Board of Review from basing its apportionment on benefits LBWL would receive from the drain due to the fly ash pit and other conditions created by LBWL, but the Board of Review inappropriately went further and disregarded all evidence regarding LBWL's property. We disagree.

The Township relies on somewhat out-of-context statements made by two of the three Board members on the last day of the Board of Review. One stated that "[a]s per the writ of certiorari—excuse my pronunciation—I have again reviewed the facts and the testimony with a clear conscience to disregard my earlier judgment of these matters and reach an unbiased opinion relating only to the facts as presented after the order of May 20th, 2013." He also stated, however, that he had considered "all the 40-plus hours" of testimony over all eight days and had given considerable attention to LBWL's fly ash pit, which would tend to work in the Township's favor. On balance, we are not persuaded that this board member actually disregarded everything from the first four days of the Board of Review proceeding.

The other Board member stated that his original decision "was based, to large [sic] extent, on that fly ash as it's called . . . That troubles me a lot, even today. But that's for other regulatory bodies, the DEQ, and we have—we're under a court order not to consider that." The trial court's remand order did, in fact, state explicitly that "the Board of Water and Light's responsibility for a fly ash pit" was an irrelevant and impermissible consideration. Nothing in this Board member's statement indicates that he totally disregarded any other evidence regarding LBWL's property, and to the extent he disregarded any consideration of the fly ash pit, he appears to have correctly construed and properly followed the trial court's remand order. The Township raises no particular objection to any act or omission of the third member of the Board of Review. The Township has not shown that the Board of Review disregarded the trial court's remand order.

In conclusion, the Township has not shown that the trial court clearly erred in finding the Board of Review's conclusion to have been based on competent, material, and substantial

evidence on the whole record and to have not been a product of an incorrect application of the law. Consequently, it must be affirmed.

/s/ Amy Ronayne Krause
/s/ Kurtis T. Wilder
/s/ Cynthia Diane Stephens